**Henry C. WENKE and Pauline Wenke, Plaintiffs,**

**v.**

**AMOCO CHEMICALS CORPORATION et al., Defendants and Third-Party Plaintiffs,**

**v.**

**DELAWARE INSULATION COMPANY, A Delaware Corporation, Third-Party Defendant.**

Superior Court of Delaware, New Castle.

April 6, 1972.

———◆———

Jay H. Conner, Wilmington, for plaintiffs.

James T. McKinstry, Wilmington, for Amoco Chemicals Corporation.

Alfred Isaacs, Wilmington, for Catalytic Construction Co.

William F. Taylor, Wilmington, for Delaware Insulation Co.

## OPINION

CHRISTIE, Judge.

This is a motion for summary judgment brought by defendants as third party plaintiffs in a personal injury action to establish the moving parties' contractual right to indemnification from the third party defendant under the terms of a written contract.

The insured plaintiff, Henry Wenke, was employed by Delaware Insulation Company (hereafter referred to as Delaware Insulation) as a pipe insulator. On December 17, 1969, Mr. Wenke was injured when his sleeve became caught in a machine on which he was working. The middle finger of his right hand was smashed causing its complete amputation.

The injury occurred while Delaware Insulation was engaged in the performance of a subcontract with Catalytic Construction Company (hereafter referred to as Catalytic) which was the general contractor for Amoco Chemicals Corporation (hereafter referred to as Amoco), the owner of the plant that was under construction. The injured plaintiff and his wife brought this action for personal injuries against Catalytic and Amoco and these defendants in turn brought a third party action against Delaware Insulation based on an indemnification clause in its contract with Catalytic.

The contract between Delaware Insulation, as subcontractor, and Catalytic, as general contractor, provided in pertinent part:

"(a) Subcontractor (Insulation) agrees that all risks of damage to Subcontractor's property, equipment, materials and supplies and of injury to Subcontractor's employees, agents and invitees and to the employees, agents and invitees of any subcontractor to the Subcontractor and of any damage to the property, equipment, materials and supplies thereof, regardless of the cause of such damage or

injury, shall be assumed by Subcontractor and that Catalytic and Catalytic's customer (Amoco), and the officers, employees and agents of each of them, are released from any and all liability arising out of such injury or damage.

(b) Subcontractor agrees to indemnify and hold harmless Catalytic and Catalytic's Customer and the officers, employees and agents of each of them, from any and all liabilities, losses, claims and expenses, legal or otherwise, of any nature whatsoever, (including liabilities, losses, claims and expenses under indemnity agreements given by Catalytic or Catalytic's Customer) which result directly or indirectly from injury to or death of any person or persons or damage to any property, including loss of use thereof, and which arise out of the performance of this contract, or any modifications or amendments thereto, regardless of the cause of such injury or damage."

Delaware Insulation contends that it is not bound by the quoted terms of the contract and that such terms are ineffective because of the provisions of 6 Del.C. § 2704 which provide that exculpatory clauses in certain contracts are void. This section states:

"A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement (including but not limited to a contract or agreement with the State, any County, municipality or political subdivision of the State, or with any agency, commission, department, body or board of any of them, as well as any contract or agreement with a private party or entity) relative to the construction, alteration, repair or maintenance of a road, highway, driveway, street, bridge or entrance or walkway of any type constructed thereon, and building, structure, appurtenance or appliance, including without limiting the generality of the foregoing, the moving, demolition and excavating connected therewith, purporting to indemnify or hold harmless architects, engineers, surveyors, owners or others, for damages arising from liability for or their agents, servants and employees, for damages arising from liability for bodily injury or death to persons or damage to property caused by or resulting or arising from or out of the negligence of such architect, engineer, surveyor, owner or others than the promisor or indemnitor, or their agents, servants or employees, or without limiting the generality of the foregoing, caused by or resulting or arising from or out of defects in maps, plans, designs, specifications prepared, acquired or used by such architect, engineer, surveyor, owner, or others than the promisor or indemnitor, or their agents, servants or employees, is against public policy and is void and unenforceable." (6 Del.C. § 2704(a))

The third party plaintiffs, however, argue that § 2704 is not applicable. They contend that the Supreme Court has held in a decision issued subsequent to the enactment of § 2704 that an indemnification provision similar to the one herein was enforceable as between the parties. Bar Steel Construction Corp. v. Read, 277 A.2d 678 (Del.1971). In that case, as in this case, there was an indemnification agreement between a general contractor and a subcontractor under which the parties had agreed that the general contractor was to be held harmless from any claim for personal injury or death arising from the subcontractor's phase of work. The Supreme Court affirmed the granting of summary judgment upholding the validity of the indemnification provision and holding that the indemnification agreement governed the situation. The Court apparently did not consider § 2704 because, as the record of that case reveals, the contract in question had been executed in 1966, two years prior to the effective date of the statute. The failure of the Supreme Court to mention § 2704 cannot be construed to be a ruling one way or the other as to the applicability of the statute.

I find, nonetheless, that § 2704 is not applicable in this case for two reasons. (1) The rule of *ejusdem generis* limits the application of this section to persons or professions within the same class as the "architects, engineers, and surveyors" mentioned in the statute, and (2) a comparison of § 2704 with statutes from other states, which are more clearly constructed, leads to the conclusion that this section was not intended to invalidate contractors' and subcontractors' contracts for indemnity.

I

■ One important guide line often used to aid in the interpretation of statutes is the rule that "where, in a statute, general words follow a designation of particular subjects or classes of persons, the meaning of the general words will ordinarily be presumed to be restricted by the particular designation, and to include only things or persons of the same kind, class or nature as those specifically enumerated, unless there is a clear manifestation of a contrary purpose". 50 Am.Jur. 244. This guide line, often referred to as *ejusdem generis* was used in Bigger v. Unemployment Compensation Commission, 4 Terry 274, 46 A. 2d 137 (Del.Super.1946), aff'd 4 Terry 553, 53 A.2d 761 (Del.1947) where the Court stated " . . . The particular word may be said to be the genus, the general word used for including other species of the same genus".

The Delaware statute concerns itself with two sets of classes, the first dealing with architects, engineers, surveyors and owners. This class includes only those who are or might be involved in the planning or preconstruction stage. It is their profession (or special function in the case of an owner) to design, lay out and plan the course and manner in which the construction is to progress. The legislature was careful not to limit the preconstruction class to those specifically mentioned above and the word "others" was inserted; but under the circumstances and under the rule of *ejusdem generis* the word "others" appears to have been inserted so as to include only similar preconstruction planners including professionals not specifically mentioned, such as land planners and soil analysts.

The second class referred to in the statute includes a similar classification, for it is concerned with maps, plans, designs and specifications—materials primarily produced by the preconstruction professionals in their work. Other items that would be included within this class might be blueprints, engineering studies and other technical paraphernalia.

The purpose of the statute is to prevent owners and their affiliated preconstruction professional people who furnish plans, designs and specifications from contracting away their duty to stand behind their product. There is no clear or specific reference in the statute to contractors or subcontractors engaged in the actual construction of buildings or to the services which they may render in repairing or renovating the same. It would be an extension of the statute to assume that the legislature intended to include those involved in the actual construction stage when all the specific wording of the statute is directed to preconstruction matters. The Court should not extend the general scope of a statutory provision where it appears that the specific wording in the statute was intended to prevail over or limit the general wording. See Mergenthaler v. State, 239 A.2d 635 (Del.1968).

II

■ A comparison of § 2704 with statutes from other states which are more clearly drafted leads to the conclusion that the General Assembly did not intend the provisions of this statute to forbid contracts between contractors and subcontractors for indemnity. The invalidity of certain indemnity clauses has been a matter of recent legislation in a number of jurisdictions. Cal.Civ.Code § 2782; 29 Ill.Stat. Ann. § 61; Mich.Civ.Laws Ann. (MCLA) §

691.991; N.Y.Gen.Obligations Law Mc-Kinney's Consol.Laws, c. 24–A, §§ 5–321–324; 68 Penna.Stat.Ann. § 491. The statutes of California, Illinois, and Michigan by clear and specific wording provide for broad invalidity of indemnification contracts with respect to the construction, repair, and maintenance of buildings or structures. These statutes make no provision which seems to confine the statute to a limited class such as architects, engineers, and surveyors.[1] On the other hand, the Pennsylvania statute is clearly limited in its scope to the preconstruction stage and the New York General Obligations Law confines its scope to architects, engineers and surveyors in the following terms:

"**§ 5–324.** *Agreements by owners, contractors, subcontractors or suppliers to indemnify architects, engineers and surveyors from liability caused by or arising out of defects in maps, plans, designs and specifications void and unenforceable*

Every covenant, agreement or understanding in, or in connection with any contract or agreement made and entered into by owners, contractors, subcontractors or suppliers whereby an architect, engineer, surveyor or their agents, servants or employees are indemnified for damages arising from liability for bodily injury to persons or damage to property caused by or arising out of defects in maps, plans, designs or specifications, prepared, acquired or used by such architect, engineer, surveyor or their agents, servants or employees shall be deemed void as against public policy." (§ 5–324)

Although the Delaware statute is less clear, there is a strong similarity in the two legislative enactments and I am of the opinion that the New York statute provides insofar as it is here pertinent what the Delaware statute was intended to provide. That the New York legislature intended § 5–324 to be limited to the preconstruction class is evidenced by § 5–323 of that law which provides by separate statute for the invalidity of agreements, exempting building service or maintenance contractors from liability for negligence.

It is unlikely that the Delaware General Assembly intended to make a sweeping limitation on the contracting powers of contractors and subcontractors when dealing among themselves by merely making a vague reference to "others" in a statute apparently designed to limit indemnity clauses in contracts of preconstruction designers and planners.

The Courts in this State have held, even as recently as *Bar Steel, supra,* that indemnification clauses such as the one in issue are valid and not in violation of public policy. It would take a clearly applicable statute to wipe out the recognition that the common law has given over the years to construction indemnity clauses and invalidate all of them. See Palmer v. Inhabitants of Town of Sumner, 133 Me. 337, 177 A. 711 (1935).

I find that § 2704 does not apply to indemnification clauses between contractors and subcontractors as to the work contemplated in the contract in question.

The substance of the indemnity clause, if applicable, has not been contested by Delaware Insulation. I find that the agreement

1. For example, the Michigan statute provides:
A covenant, promise, agreement of understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenance and appliance, including moving, demolition and excavating connected therewith, purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee or indemnitee, his agents or employees, is against public policy and is void and unenforceable. M.C.L.A. § 691.991.

does require Delaware Insulation to indemnify and hold harmless Catalytic and Amoco.

Summary judgment in favor of Catalytic and Amoco and against Delaware Insulation is granted.

It is so ordered.