Thomas H. MARTINDALE, III, and
Linda J. Martindale, Plaintiffs,

v.

GETTY REFINING AND MARKETING
COMPANY, a corporation of the State
of Delaware, Defendant and Third-Party
Plaintiff,

v.

CATALYTIC, INC., Third-Party
Defendant.

Civ. A. No. 79–586.

United States District Court,
D. Delaware.

March 23, 1981.

F. Alton Tybout, and Colin M. Shalk, of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for plaintiffs.

Ben T. Castle, and Anthony G. Flynn, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendant and third-party plaintiff.

Richard K. Herrmann, of Bayard, Brill & Handelman, P.A., Wilmington, Del., for third-party defendant.

## OPINION

STEEL, Senior District Judge:

On September 26, 1979, Thomas H. Martindale, III, plaintiff, was injured while working on the premises of a Delaware refinery owned by the Getty Refining and Marketing Co. ("Getty"). Plaintiff, an employee of Catalytic, Inc. ("Catalytic"), was working pursuant to a maintenance contract between Getty and Catalytic for the maintenance and repair of Getty's refinery. Plaintiff brought suit against Getty alleging negligence on its part, and Getty filed a third-party complaint against Catalytic for indemnification based upon an exculpatory clause in the maintenance contract.* That provision reads in pertinent part:

... CATALYTIC shall be responsible for, shall bear all risks of, and shall make good at its expense, for the following:

\* \* \* \* \* \*

---

* At oral argument, counsel for Getty stated that Getty, third-party plaintiff, was relying solely upon this express contractual provision for its

6. Losses and expenses resulting from injuries to or death of employees of CATALYTIC or CATALYTIC's agents or subcontractors; it being agreed that CATALYTIC will defend, indemnify and save harmless OWNER [Getty] from and against all such losses, expenses, and liability; it being further agreed that CATALYTIC's said contract to indemnify OWNER shall not apply to any liability in excess of $500,000 per occurrence established against OWNER for any such injuries or death solely and proximately caused by or arising out of the willful act or the negligence of OWNER, its agents or employees.

Catalytic filed a motion to dismiss the third-party complaint on the ground that the complaint failed to state a claim upon which relief may be granted.

Neither party disputes that the state law of Delaware controls this Court's decision on the motion to dismiss. Under Delaware law, if an indemnification provision in a contract is crystal clear and unequivocal in showing that the contracting parties intended that the indemnitee should be indemnified against his own negligence, the contract provision will be given its full effect unless precluded by Delaware statute. *See Sweetman v. Strescon Industries, Inc.,* 389 A.2d 1319, 1321 (Del.Super.1978); *Cumberbatch v. Board of Trustees,* 382 A.2d 1383, 1386 (Del.Super.1978); *All-State Investigation and Security Agency, Inc. v. Turner Construction Co.,* 301 A.2d 273, 274–75 (Del.1972).

In this case, the contract between Getty and Catalytic provided that Getty would be saved harmless from and against all losses, expenses and liability arising from injuries or death of employees of Catalytic. This indemnification was expressly delineated even in the event of liability arising "solely and proximately" from the negligence of Getty, up to a limitation of $500,000. Thus, under Delaware law, unless precluded by statute, this indemnifica-

claimed right of indemnification and not upon any other indemnification right which might be implied in the contract.

tion provision should be given its full effect. *Compare All-State, supra, with State v. Interstate Amiesite Corp.*, 297 A.2d 41 (Del. 1972).

The Delaware General Assembly has enacted a statute, however, which declares exculpatory clauses in certain contracts to be against public policy, and void and unenforceable. Title 6, section 2704(a), of the Delaware Code provides:

(a) A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement (including but not limited to a contract or agreement with the State, any county, municipality or political subdivision of the State, or with any agency, commission, department, body or board of any of them, as well as any contract or agreement with a private party or entity) relative to the construction, alteration, repair or maintenance of a . . . building, structure, appurtenance or appliance, . . . purporting to indemnify or hold harmless architects, engineers, surveyors, owners or others, or their agents, servants and employees, for damages arising from liability for bodily injury or death . . . caused by or resulting or arising from or out of the negligence of such architect, engineer, surveyor, owner or others than the promisor or indemnitor, or their agents, servants or employees, or without limiting the generality of the foregoing, caused by or resulting or arising from or out of defects in maps, plans, designs, specifications prepared, acquired or used by such architect, engineer, surveyor, owner, or others than the promisor or indemnitor, or their agents, servants or employees, is against public policy and is void and unenforceable.

The third-party defendant argues that under this statute the exculpatory clause in the Getty-Catalytic maintenance contract is against public policy, void and unenforceable, and consequently, the third-party defendant's motion should be granted.

■ No decision of the Supreme Court of Delaware has construed section 2704(a) as it applies to an exculpatory clause in a contract between the owner of a structure or building and one who contracted to maintain it, as is the case here. It is the duty of the Court, therefore, to "ascertain from all the available data what the state law is and apply it." *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). Because the Supreme Court of Delaware has not been faced with a situation directly comparable to the instant one, this Court must discern how that Court would most probably rule in this case, based upon any insights revealed by lower court state decisions.

In *Wenke v. Amoco Chemicals Corp.*, 290 A.2d 670 (Del.Super.1972), the plaintiff, who was employed by the third-party defendant, Delaware Insulation Company, was injured when engaged in the performance of a subcontract with Catalytic Construction Company, which was the general contractor for Amoco Chemicals Corporation, the owner of a plant that was under construction. Plaintiff and his wife brought an action for personal injuries against defendants Catalytic *and* Amoco. The defendants then brought a third-party action against Delaware Insulation based on a clause in the contract between Delaware Insulation and Catalytic, under which Delaware Insulation, the subcontractor, agreed to indemnify and hold harmless Catalytic, the general contractor, and Amoco, the owner of the building, for liability resulting from injuries to any person which arose out of performance of the contract.

Both third-party plaintiffs moved for summary judgment to establish their contractual right against the third-party defendant to indemnification by that party. The third-party defendant argued in opposition to that motion that the indemnification clause was ineffective because it was against public policy under section 2704(a). Section 2704 was found not applicable to the case and the third-party plaintiff's motion was granted.

In *Wenke*, the Court interpreted section 2704(a) to have no effect upon the enforceability of an indemnity clause in a contract

between a general contractor and a subcontractor because the statute was not intended to cover contracts between those entities. Third-party defendant Catalytic erroneously argues that this is all the Court held. The holding of the Court was not so limited. It also excluded "owners" from the application of the statute unless owners were involved in special functions in planning and preconstruction stages of an operation comparable to architects, engineers and surveyors. The decision of the Court makes this clear:

> The Delaware statute concerns itself with two sets of classes, the first dealing with architects, engineers, surveyors *and owners.* This class includes only those who are or might be involved in the planning or preconstruction stage. It is their profession (*or special function in the case of an owner*) to design, lay out and plan the course and manner in which the construction is to progress.
>
> \* \* \* \* \* \*
>
> The purpose of the statute is to prevent *owners* and their affiliated preconstruction professional people who furnish plans, designs and specifications from contracting away their duty to stand behind their product.

*Id.* at 673 (emphasis supplied).

The *Wenke* case is not susceptible to the limited interpretation which the third-party defendant would give it. The Court was explicit in concluding:

> "I find that the agreement does require Delaware Insulation to indemnify and hold harmless Catalytic [the general contractor] *and* Amoco [the owner]."

*Id.* at 674–75 (emphasis supplied). Third-party defendant argues that *Wenke*'s interpretation of section 2704(a) as it applies to an "owner" is not persuasive and should not be followed by this Court. For this Court to do so, it is argued, would render meaningless the words "repair or maintenance" in the statute. These words are not meaningless for planning by architects, engineers, surveyors and owners may also be called for prior to commencement of actual repair or maintenance work on structures or buildings.

In the instant case, no such "special function" of Getty, the owner, was involved in the planning or preconstruction stages of the maintenance work by Catalytic. Hence, under the clear holding of *Wenke*, the clause in the Getty-Catalytic contract is not covered by the statute and Getty is entitled to the indemnification from Catalytic which the maintenance contract provided.

The motion of the third-party defendant to dismiss the third-party complaint will be denied.