**Dominick A. PAOLI, Sr. and Violet Lee Paoli, His Wife, Plaintiffs,**

v.

**DAVE HALL, INC., a Corporation of the State of Delaware, Donald F. Deaven, Inc., a Corporation of the State of Delaware, William C. Zern and E.I. DuPont de Nemours & Company, a Corporation of the State of Delaware, Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted: Dec. 20, 1982.

Decided: April 11, 1983.

---

Albert L. Simon, and Stephen P. Casarino, Wilmington, for plaintiffs.

J.R. Julian, Wilmington, for defendants Dave Hall, Inc. and E.I. DuPont de Nemours & Company.

Susan C. Del Pesco, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendants Donald F. Deaven, Inc. and William C. Zern.

O'HARA, Judge.

Cross-motions for summary judgment have been advanced by defendant Dave Hall, Inc. ("Hall") and defendants Donald F. Deaven, Inc. ("Deaven") and William C. Zern ("Zern"). The issues upon which the parties seek summary adjudication[1] concern 1) whether Zern, a crane operator in the service of equipment owner Deaven and leased by him to general contractor Hall to operate said crane, was, in fact, a "loaned employee" of the latter during the incident giving rise to this lawsuit, and 2) whether Deaven and Zern are entitled to indemnity from Hall in the event liability for negligence is assessed against them.

The underlying action is one for personal injuries arising in the following manner. In accordance with a contract entered into with E.I. DuPont de Nemours & Company, Hall was in the process of constructing a pharmacological laboratory in Newark, Del-

---

1. Specifically, the parties seek opposite resolution of the same issues. Plaintiffs join defendant Hall in opposing defendants' (Deaven and Zern) motion for summary judgment.

aware. In order to complete the roof of said structure, Hall leased from Deaven a crane to lift prefabricated, triangular shaped trusses onto the perimeter walls. Deaven likewise supplied an operator, Zern, to the job site to man this equipment. In undertaking this construction procedure, Zern placed the trusses along the length of the building's concrete walls, with each truss braced and connected to the adjacent truss.

Midway through this procedure, Hall's foreman instructed Zern to begin depositing plywood bundles on the trusses. The first bundle was placed thereupon without incident; the second, however, was not, and as a result the trusses toppled over and the walls of the building collapsed, injuring plaintiff Dominick A. Paoli, Sr., who was thrown from the scaffolding on which he was standing.[2]

At this juncture there is a factual dispute as to what precisely occurred during placement of the second bundle of trusses to cause the structure to collapse. Zern explained the incident as follows:

The bundles were on the outside of the building. I was signaled to pick the bundle up and send it up to the roof, which I did. I got it up to the roof in the position they wanted. They wanted me to lower it on the roof. I lowered it on the roof. And they held me there. I—the bundle was on the roof completely, but I still had the majority of the weight. And at that point they wasn't ready for me to release the full load yet; so I locked the crane in position and waited. They gave me the signal to let it down; I let it down. And I am not sure exactly who was the man unhooking. I released it. He gave me a signal to release it. I give him the weight. He reached up to unhook me. And that's when the trusses fell. So I seen movement, I picked back up on the load, I thought maybe he would hang on

to the load. And the building fell. I swung back over, let the plywood down and that was it.

Earl Bowman, a Hall employee who witnessed the event, offered a different account of Zern's actions:

He started to let it down. It got closer to the truss so it looked like he was letting it down and then at the last minute he swung it to the south but at this time it was close enough to the trusses where it must—to come down on this teeter-totter a bit and come down and hit a couple trusses and bounced against them.

The evidence is similarly controverted with respect to Zern's reliance on hand signals from the Hall employees.

On their motion for summary judgment, defendants Deaven and Zern seek to have any liability for negligence assessed against Zern[3] imputed to Hall under the borrowed-servant or loaned employee doctrine. The proper inquiry in determining whether the doctrine is applicable appears in *Richardson v. John T. Hardy & Sons, Inc.,* Del.Supr., 182 A.2d 901 (1962):

Whether or not a loaned employee becomes the employee of the one whose immediate purpose he serves is always a question of fact, and depends upon whether or not his relationship to the specific employer has the usual elements of the employer-employee status. Fundamentally, it is not important whether or not he remains the employee of the general employer as to matters generally. What is important to determine is, with respect to the alleged negligent act in question, whether or not he was acting in the business of and under the direction of the general or the specific employer. * * This is almost always determined by which employer has the right to control and direct his activities in the performance of the act allegedly causing the inju-

---

2. At the time of the accident, plaintiff was an employee of John W. Walker Construction Co., a sub-contractor of defendant Hall.

3. Specifically, the complaint asserts that Deaven and Zern are jointly and severally liable to plaintiffs by reason of the alleged negligent acts of Zern.

ry, and whose work is being performed. * * *

Furthermore, in the instant case, Hall directs the Court's inquiry to the presumption that an owner of heavy rented equipment, who supplies to the lessor an operator therefor, retains control over the actual operation of the equipment, and in the actual operation thereof, the operator remains the employee of the owner. *Richardson v. John T. Hardy & Sons, Inc.,* supra; *Brittingham v. American Dredging Company,* Del.Supr., 262 A.2d 255 (1970).

Although both *Richardson* and *Brittingham* involved the lease of heavy equipment, the above cited presumption was conclusive in neither case; in *Richardson* it did not even attach since the Court found that the negligence charged was not an act of actual operation of the machine. Specifically, *Richardson* involved an action against the lessor of a backhoe for injuries sustained by the lessee's foreman when the side wall of a trench collapsed on him. The Court therein ruled that the alleged negligence of the machine's operator in piling the dirt too close to the trench was not imputable to the lessor, who had furnished operator and paid his wages, where 1) the operator was instructed where and how deep to dig the ditch by the foreman; 2) the foreman staked out the ditch for the operator's guidance; and 3) the foreman directed the operator on which side of the trench to pile the dirt removed. This conclusion was dictated by the fact that the negligence cited was not an act of actual operation of the machine, but rather the act of piling the dirt too close to the mouth of the trench.

The *Brittingham* case, on the other hand, did involve negligent operation of the heavy rental equipment itself. However, *Brittingham* was not an action *against* a lessor for his operator's negligence, but rather a suit brought *by* the owner/lessor against the lessee dredging company for damage to a bulldozer by imputing the operator's alleged negligence to the lessee, presumably under the borrowed servant doctrine. While the Court therein acknowledged the presumption against the owner/lessor of equipment, it further cited evidential considerations which support the presumption as well as those tending to defeat it:

The evidence in the case at bar is that the plaintiff selected the operator of the machine, retained the right to discharge him, retained the right to determine and supervise the method of operating the machine, paid the operator's wages, and paid for the upkeep and maintenance of the machine. The evidence further shows that defendant could not, and did not, attempt to control the actual operation of the machine; could not discharge the operator but only complain to plaintiff about him and had no responsibility for the upkeep and care of the machine.

Inasmuch as the authority of the lessee therein was limited to instructing the operator as to the area in which he was desired to work and the result he was to accomplish, the *Brittingham* Court declined to impute the operator's negligence to lessee under the borrowed servant doctrine.

■ Thus, under *Richardson* and *Brittingham,* this Court's inquiry reduces itself to whether the negligence charged involved actual operation of Deaven's crane, in which case there is a presumption that Zern remained the owner's employee for purposes of liability, or some other attendant act involving the control or discretion of Hall or his crew, thereby imputing liability to the lessee under the borrowed servant doctrine. At this juncture, the Court notes that plaintiffs allege that Zern was negligent as follows:

(a) In operating the crane to lift bundles of plywood sheets from the ground to the level of the then height of the partially constructed building, he allowed one or more of said bundles each weighing approximately 1,500 pounds to drag across and strike trusses which had been installed as part of the construction of said building causing the trusses to topple over and push out the walls of the building;

(b) By placing the bundles of plywood in a concentrated portion of the building resulting in the overloading of the trusses.

The first act articulated above suggests that the negligence occurred in the actual operation of the equipment. However, the latter basis of liability, involving placement of the bundles, indicates negligence in the exercise of judgment or discretion. Moreover there is evidence of record that the placing of plywood bundles was determined by Hall's crew and that operator Zern performed said act at their direction, a situation factually analogous to *Richardson.*

The parties admit that there is a factual dispute as to how the incident occurred; however, Hall asserts that the only material fact is that Zern alone controlled the actual operation of the machine. With that contention the Court does not agree, noting that said fact was not dispositive in *Richardson.*

■ In sum, the applicability of the borrowed servant doctrine with respect to defendant Zern is an issue ripe for jury determination. Under no circumstances will summary judgment be granted when there is a reasonable indication that a material fact is in dispute. *Ebersole v. Lowengrub,* Del.Supr., 180 A.2d 467 (1962).

The second issue raised by the parties' respective motions for summary judgment concerns the indemnity and defense provisions of the lease between Deaven and Hall. That agreement reads as follows:

Lessor agrees to supply the above equipment and necessary personnel to operate same under the direct and sole supervision of the Lessee.

Lessee agrees to hold lessor harmless for loss, damage and expense resulting from the operation of the above mentioned equipment either bodily injury or property damage including damage or loss to the equipment leased hereby, and agrees to defend lessor from all suits resulting from above operation.

Defendants Deaven and Zern suggest that the above language suffices to provide them indemnity and a defense for the consequences of their negligence occurring during the period of the lease.

■ Delaware Courts generally disfavor contractual clauses purporting to exonerate a party from liability in matters resulting from its own negligence. *J.A. Jones Const. Co. v. City of Dover,* Del.Super., 372 A.2d 540 (1977). The contract must clearly and unequivocally articulate an intent to afford such immunity, and if a contrary intent can reasonably be entertained, the Court will rule against indemnification. *Blum v. Kauffman,* Del.Supr., 297 A.2d 48 (1972). Those authorities which have held the contractual language sufficient to protect a party against allegations of its own negligence have all specifically referred to negligence of the protected party. *Warburton v. Phoenix Steel Corporation,* Del.Super., 321 A.2d 345 (1974), aff'd., *Noble J. Dick, Inc. v. Warburton,* Del.Supr., 334 A.2d 225 (1975); *All-State Inv. & Sec. Agcy., Inc. v. Turner Const. Co.,* Del.Supr., 301 A.2d 273 (1972).

■ With regard to the provision at issue herein, the Court fails to discern an intent to exonerate Deaven from its own negligence. Not only must there be a reference to negligence, which is lacking in the instant case, but the allusion thereto must further specify that it is the negligence of the purportedly protected party which is contemplated in the indemnity agreement. *J.A. Jones Const. Co. v. City of Dover,* supra; *State v. Interstate Amiesite Corporation,* Del.Supr., 297 A.2d 41 (1972).

Thus, the Court concludes that the language in the instant contract does not meet the requisite established by the Delaware case authority. Accordingly, defendant Deaven is not entitled to indemnity or defense from Hall for any negligence attributed to Deaven or Zern as his employee (in the event the borrowed servant doctrine does not apply).

■ Finally, the Court turns to Hall's motion to strike all references by Deaven

and Zern to testimony entertained at an Occupational Safety and Health Review Commission ("OSHRC") hearing bearing on the subject of this action. The OSHRC transcript is not properly in the record and, therefore, may not be considered on motion for summary judgment. *G.R. Sponaugle & Sons, Inc. v. McKnight Const. Co.*, Del.Super., 304 A.2d 339 (1973). Nor is the testimony sworn or certified, an additional impediment to its consideration herein. *United States v. Tuteur*, C.A. 7, 215 F.2d 415 (1954).

For the reasons herein set forth, the Court concludes that 1) Cross-motions for summary judgment by Deaven and Zern and Hall on the applicability of the borrowed servant doctrine must be denied; and 2) on the issue of the indemnity and defense provisions of the lease between Deaven and Hall, motion for summary judgment by Deaven and Zern must be denied, but Hall's motion for summary judgment must be granted and 3) Hall's motion to strike references to testimony at the OSHRC hearing must be granted.

IT IS SO ORDERED.