Carolyn R. JAMES, Widow and Executrix
of the Estate of Herschel E. James,
Jr., Plaintiff,

v.

GETTY OIL COMPANY (EASTERN OP-
ERATIONS), INC., a Delaware corpora-
tion, Defendant and Third-Party Plain-
tiff,

v.

CATALYTIC, INC., a Delaware corpora-
tion, Third-party Defendant.

GETTY OIL COMPANY (EASTERN OP-
ERATIONS), INC., a Delaware corpora-
tion, and Getty Refining & Marketing
Co., a Delaware corporation, Plaintiffs,

v.

CATALYTIC, INC., a Delaware
corporation, Defendant.

Caroline M. HEIM, Widow of Edward F.
Heim, and John T. Pucylowski, Executor
of the Estate of Edward F. Heim, Plain-
tiffs,

v.

KOPPERS COMPANY, INC., a Delaware
corporation, Defendant,

and

GETTY OIL COMPANY, a Delaware
corporation, Defendant and
Third-Party Plaintiff,

v.

CATALYTIC, INC., a Delaware corpora-
tion, Third-Party Defendant.

Superior Court of Delaware,
New Castle County.

Submitted: June 13, 1983.

Decided: Oct. 7, 1983.

On Motion for Reargument and
Reconsideration Jan. 4, 1984.

William F. Taylor, Ben T. Castle, and Anthony G. Flynn, of Young, Conaway, Stargatt & Taylor, Wilmington, for Getty.

Richard K. Herrmann, of Bayard, Brill & Handelman, P.A., and Susan C. Del Pesco, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for Catalytic.

O'HARA, Judge.

The instant case is a consolidation of several actions, all of which involve a dispute between Getty Refining and Marketing Co. ("Getty") and Catalytic, Inc. ("Catalytic") concerning an indemnity clause included in a contract between Getty Oil Company (Eastern Operations), Inc., predecessor to Getty, and Catalytic.

Article VII of the Delaware Refinery Maintenance Contract ("Contract"), which covers the parties' respective liabilities for various phases of their ongoing business relationship, states as follows:

> There shall be excluded from the costs includible in the compensation payable hereunder by OWNER [Getty] to CATALYTIC pursuant to Article III hereof and CATALYCIC shall be responsible for, shall bear all risks of, and shall make good at its own expense for the following:

> 6. Losses and expenses resulting from injuries to or death of employees of CATALYTIC or CATALYTIC'S agents or subcontractors; it being agreed that CATALYTIC will defend, indemnify and save harmless OWNER from and against all such losses, expenses, and liability; it being further agreed that CATALYTIC'S said contract to indemnify OWNER shall not apply to any liability in excess of $100,000 per person or $300,000 per occurrence established against OWNER for any such injuries or death solely and proximately caused by or arising out of the willful act or the negligence of OWNER, its agents or employees.

Getty and Catalytic have filed cross-motions for summary judgment. Getty and Catalytic, their arguments to the contrary, are, nevertheless, in agreement that the primary issue is whether the purported in-

demnity clause is crystal clear and unequivocal, and, therefore, valid and enforceable, in expressing the parties' intention that Catalytic indemnify Getty from any liability arising out of injuries to Catalytic employees, even where such injuries resulted from Getty's own negligence.

Each of the underlying lawsuits, *Heim, Loden* and *James* involved accidental injuries or death to Catalytic workers at Getty's Delaware Refinery. After each accident tort actions were filed against Getty based on allegations that Getty had failed to provide adequately for the safety of the Catalytic employees. In each case the claims were settled, with Getty contributing substantial sums to the defense and settlement. Catalytic also contributed towards the settlement of each claim, but did so only up to the limits of its primary liability insurance coverage, or under a reservation of rights to contest the validity of the indemnity agreement. In each case Getty filed a third party claim or brought a separate action against Catalytic for reimbursement of the funds contributed by Getty, pursuant to the indemnity provision in the Getty-Catalytic agreement.

In 1971, the date of the *Heim* accident, the first accident involved here, Catalytic was insured by Hartford Insurance Company which provided $100,000/$300,00 in contractual bodily injury liability. The *Heim, Loden,* and *James* cases were the first cases to arise against Getty which involved claims by Catalytic employees in excess of $100,000.

In 1974, when it appeared that the *Heim* claim would exceed the $100,000 Hartford coverage, inquiries were directed to The Home Indemnity Company ("Home"), Catalytic's excess liability carrier, as to its position under the Getty-Catalytic indemnity provision. Home stated unequivocally at that time that it would not indemnify under the provision. The *Heim* claim ultimately settled in 1977 for $300,000, of which $100,000 was paid by Catalytic (through Hartford) on behalf of Getty pursuant to the indemnity agreement, $50,000 was paid by Koppers Company, a co-defendant, and $150,000 was paid by Getty.

The *Loden* case, a wrongful death and survival action, was initiated in 1972. In 1975, the survival action was settled for $300,000, $100,000 of which was paid by Catalytic (through Hartford) on behalf of Getty, pursuant to the indemnity agreement, and $200,000 was paid by Getty. In 1977, Getty filed a separate civil action against Catalytic ("*Getty v. Catalytic*") to recover the amount paid by Getty in settlement of the survival action and to require Catalytic to hold Getty harmless from any prospective liability, including defense costs, in the wrongful death action. Later in 1977, a jury verdict was entered against Getty for $580,000 on the *Loden* wrongful death claim. While Getty's motion for new trial was on appeal to the Supreme Court, the claim was settled for $530,000, all of which was paid by Getty.

The *James* case, another wrongful death and survival action, was brought against Getty in 1975. In 1976, Getty filed a Third Party Complaint against Catalytic, based upon the indemnity agreement. The *James* case was settled in 1977 for $355,000, of which $100,000 was paid by Catalytic through its primary carrier, Liberty Mutual Insurance Company, on behalf of Getty. Getty paid $255,000 in settlement of the *James* case. After the settlement, Catalytic filed a counterclaim for the $100,000 paid by Catalytic on Getty's behalf, and filed a Motion for Declaratory Judgment and/or Summary Judgment.

In 1979, *James, Heim* and *Getty v. Catalytic* (Loden) were consolidated for the limited purpose of litigating the issue of the effect and interpretation of the Getty-Catalytic indemnity agreement.

Getty contends that the language of the indemnity clause is clear and unequivocal and, therefore, valid and enforceable. Getty seeks reimbursement from Catalytic for the approximately $1,135,000 which Getty, partly through its insurer, contributed towards settling the underlying cases, plus all defense costs, and interest.

Catalytic contends that the language of the indemnity clause is not clear, does not affirmatively obligate Catalytic to indemnify Getty for Getty's own negligence, and, therefore, should be declared unenforceable.

■ In *Marshall v. Maryland, D. & V. Ry. Co.*, Del.Super., 112 A. 526 (1921), it was recognized that indemnity agreements, which provide that the indemnitee will be held harmless for the consequences of his own negligence, are enforceable. Such indemnity agreements, however, must be unmistakably clear. As the *Marshall* Court stated:

> An exemption from liability for damages in consequence of negligence as part of the consideration for such an agreement is valid in a case like this. . . . If it was the intention of the parties that the provision should secure to the defendant company the exemption claimed for it in this action, it should appear from the language of the provision fairly interpreted; for such immunity cannot rest upon a presumption or strained construction of the provision.

Doubtful or ambiguous language in such agreements has been construed consistently against such an interpretation. *Hollingsworth v. Chrysler Corporation*, Del.Super., 208 A.2d 61 (1965). In *State v. Interstate Amiesite Corporation*, Del.Supr., 297 A.2d 41 (1972), the Court stated that:

> . . . such a contract provision must be crystal clear and unequivocal in requiring the contractor [indemnitor] to assume all liability for damage claims, whichever party may have been guilty of the negligence which actually caused the injury.

The Court, in *Sweetman v. Strescan Industries, Inc.*, Del.Super., 389 A.2d 1319 (1978), elaborated on this rationale, stating:

> [t]he test is whether the contract language specifically focused attention on the fact that by the agreement the indemnitor was assuming liability for indemnitee's own negligence.

Article VII, paragraph 6, of the Contract states that Catalytic shall be responsible for and bear the risks and expense for "[l]osses and expenses resulting from injuries to or death of employees of CATALYTIC or CATALYTIC'S agents or subcontractors." The purpose of this clause is clearly to indicate the category of persons for whose injuries Catalytic agrees to be responsible, i.e., Catalytic's or Catalytic's agent's employees.

■ The second clause of paragraph 6 states that "CATALYTIC will defend, indemnify and save harmless OWNER [Getty] from and against all such losses, expenses and liability." Again, considering the plain meaning of the language, this clause emphasizes that the duty which Catalytic is assuming is to *indemnify* Getty, and that the indemnity is to extend to *all* such losses, expenses and liability, i.e., the losses, expenses and liability incurred by Getty as a result of the injuries to or death of Catalytic's employees or Catalytic's agent's employees as described in the first clause. Thus far, paragraph 6 is merely one of a long line of broad and all-inclusive indemnity provisions which have been found not to indemnify the indemnitee against his own negligence. *Cf., Marshall v. Maryland, D. & V. Ry. Co.*, supra; *Delaware Power & Light Co. v. Mayor and Council*, Del.Super., 200 A.2d 840 (1964); *Hollingsworth v. Chrysler Corporation*, supra; *State v. Interstate Amiesite Corporation*, supra; *Powell v. Interstate Vendaway, Inc.*, Del.Super., 300 A.2d 241 (1972). Although the language of the first two clauses of paragraph 6 is apparently all inclusive, and *logically* would encompass indemnity against Getty's own negligent acts, the courts have not permitted such a broad albeit logical reading. To be enforceable, the provision must specifically focus attention on the fact that by the agreement the indemnitor was assuming liability for indemnitee's own negligence. *Sweetman v. Strescan Industries, Inc.*, supra. If there is reason to enforce paragraph 6 as indemnifying Getty against its own negligent acts,

it must be found in the third and final clause.

The third clause states:

It being further agreed that CATALYTIC'S said contract to indemnify OWNER shall not apply to any liability in excess of $100,000 per person or $300,000 per occurrence established against OWNER for any such injuries or death solely and proximately caused by or arising out of the willful act or negligence of OWNER, its agents or employees.

Herein we find the first express reference to Getty's own negligence. Each of the cases cited by Catalytic in support of its position involved contracts which lacked any reference at all to the indemnitee's own negligence. It was the actual mention of the indemnitee's negligence that could not be implied in those cases. In the instant case, however, Getty's negligence is specifically referred to in the final clause of the indemnity provision.

The first reported Delaware decision upholding an indemnity agreement covering the indemnitte's own negligence was *Bar Steel Construction Corp. v. Read,* Del.Supr., 277 A.2d 678 (1971). The agreement in that case required the subcontractor to indemnify the general contractor from any liability for any claims arising out of the work "whether such claims or suits be based upon the Contractor's . . . alleged active or passive negligence or participation in the wrong . . . on the part of the Contractor." The Delaware Supreme Court, without discussion, upheld the provision as governing the situation.

In *All-State Inv. & Sec. Agcy., Inc. v. Turner Const. Co.,* Del.Supr., 301 A.2d 273 (1972), the Court upheld as sufficiently clear and unequivocal an indemnity clause which included the phrase, "whether or not such claims are based upon [indemnitee's] alleged active or passive negligence or participation in the wrong . . . ."

■ It has been held, however, that while the intention to indemnify against the result of the indemnitee's negligence must be clear and unequivocal, it need not be expressed in so many words. *Rock v. Delaware Electric Cooperative, Inc.,* Del.Super., 328 A.2d 449 (1974). There the Court held that where the language clearly indicates the intention of the parties that the agreement shall include negligence, the Court will give effect to such intention despite its inclination to construe the agreement strictly against the indemnitee.

■ The third clause of the indemnity provision before us now specifically mentions Catalytic's indemnification of Owner [Getty] for injuries or death solely and proximately caused by or arising out of the negligence of Owner [Getty]. This clause, in unambiguous language, merely sets a monetary limit upon Catalytic's duty to indemnify Getty when the injuries are the result of Getty's sole negligence. The language of Article VII, paragraph 6, of the Contract, therefore, is clear and unmistakable in requiring Catalytic to indemnify Getty for injuries to Catalytic's employees even where those injuries are the result of Getty's own negligence up to the stated monetary limits in cases involving Getty's sole negligence.

■ The third clause of paragraph 6 clearly places one other limit upon Catalytic's duty to indemnify Getty. As discussed earlier, the second clause includes "all such losses, expenses, and liability" in the costs to be borne by Catalytic. The third clause states that Catalytic's contract to indemnify Getty shall not apply to any *liability* in excess of the stated amounts. Since the immediately preceding phrase included reference to three categories of costs, i.e., "losses", "expenses" and "liability", it is reasonable to assume that, by including only "liability" in the third clause, the parties intended to exclude "losses" and "expenses" from the scope of the third clause. Thus, liability costs which exceed the limits will not be indemnified by Catalytic. "Losses" and "expenses", however, continue to be included in Catalytic's duty to indemnify fully. Such is the clear and unambiguous meaning of the language.

■ A few other matters deserve comment. The paragraph in question also purports to provide indemnification for injuries or death which are caused by or arise out of a "willful act" of Getty. A contract to relieve a party from its intentional or willful acts is invariably held to be unenforceable as being against clear public policy. 15 Williston Contracts, 3rd Ed. § 1750A. Therefore, to the extent that paragraph 6 seeks to indemnify Getty against its willful acts, as opposed to its negligence, the agreement is void and unenforceable.

Catalytic contends, finally, that 6 *Del.C.* § 2704 voids any purported agreement by Catalytic to hold Getty harmless from Getty's own negligence. That statute, however, has been determined to apply only to agreements covering preconstruction matters and is not applicable here. *Wenke v. Amoco Chemicals Corporation,* Del.Super., 290 A.2d 670 (1972); *State v. Interstate Amiesite Corporation,* supra; *Martindale v. Getty Refining & Marketing Co.,* D.Del., 510 F.Supp. 188 (1981).

Superior Court Civil Rule 56 affords a party summary judgment if there is no genuine issue of material fact in dispute and judgment may be entered as a matter of law. *Moore v. Sizemore,* Del.Supr., 405 A.2d 679 (1979). In the instant case both parties have moved for summary judgment and the facts must be read in the light most favorable to the respective non-moving party.

Whether Getty is entitled to summary judgment as a matter of law depends upon whether the indemnity provision of the Contract is valid and enforceable. This, in turn, depends upon whether the language is crystal clear and unequivocal. The conclusion of this Court that the language is clear and unambiguous, however, does not dispose of the case itself. As the language of the provision states, indemnification will not lie for liability exceeding $100,000 per person or $300,000 per occurrence which results from Getty's sole and proximate negligence. The parties are in dispute as to whether the injuries in the underlying cases were the result of Getty's sole negligence. Although this Court has determined that the language is clear and unmistakable, and that the contract is enforceable, application of the provision to the facts at bar is premature in that there is a genuine dispute concerning Getty's sole negligence.

In view of the Court's conclusions enumerated herein, Catalytic's motion for summary judgment must be denied. Getty's motion for summary judgment is granted in part only, being limited to this Court's interpretation of Article VII, paragraph 6 of the Contract. Whether the accidents in the three underlying cases were solely and proximately caused by the negligence of Getty is an issue to be determined by the trier of fact.

IT IS SO ORDERED.

## ON MOTION FOR REARGUMENT AND RECONSIDERATION

Catalytic, Inc. ("Catalytic") has moved for reargument and reconsideration with respect to two arguments raised in its briefs. The respective positions of Catalytic and Getty Refining and Marketing Co. ("Getty") on the motion have persuaded the Court that its earlier decision on the cross-motions for summary judgment warrants clarification. This is the Court's decision supplementing its opinion of October 7, 1983 in the above referenced matter.

Both parties agree that the Court should determine whether or not the term "solely", as used in the disputed contract provision, included or excluded the possibility of negligence on the part of a third party other than Getty or Catalytic. The specific phrase in question reads as follows:

... [I]t being further agreed that Catalytic's said contract to indemnify Owner shall not apply to any liability in excess of $100,000 per person or $300,000 per occurrence established against Owner for any such injuries or death *solely* and proximately caused by or arising out of the willful act or the negligence of Owner. (Emphasis added).

Catalytic contends that the Contract, read as a whole, cannot support the interpretation that the negligence of any third party is sufficient to eliminate the "cap" on the indemnity obligation. Paragraph 5 indemnifies Getty for liability to all but employees of Catalytic arising from Catalytic's negligence, while paragraph 6 indemnifies Getty for $100,000 liability to Catalytic employees arising from Catalytic's negligence. The focus of the two companion provisions is the presence or absence of negligence on the part of Catalytic. The meaning of *sole* negligence, in this context, argues Catalytic, means Getty's negligence, not concurrent with the negligence of Catalytic.

Catalytic further contends that under the interpretation of the agreement which Getty argues, Catalytic may be required to provide indemnity when there has been negligence on the part of an unidentified, unknown, and unpredictable third entity. Catalytic maintains that such a reading of the maintenance contract defies logic and offends the principles of indemnity which provide that contracts designed to indemnify a party for its own negligence must be crystal clear and unequivocal.

Quite simply, Catalytic's argument is unpersuasive. The dispute turns on the intended meaning of the word "solely" in the phrase "injuries or death solely and proximately caused by . . . the negligence of Owner." As the Court in *Hajoca Corporation v. Security Trust Co.,* Del.Super., 25 A.2d 378 (1942) stated:

> . . . [I]t is the duty of the Court to construe contracts as they are made by the parties themselves, and to give to language that is clear, simple and unambiguous the force and effect which the language clearly demands. The Court cannot assume to make for the parties a better agreement than they themselves have been satisfied to make, either by fastening on one of them a liability which is not within the meaning of the language used, or by affording to the other party a measure of protection which the contract does not cover.

The common dictionary meaning of the word "sole" is clear and unambiguous. It is defined as "having no sharer," "being the only one," "functioning independently and without assistance or interference," and "belonging exclusively or otherwise limited to one usually specified individual, unit, or group." "Solely" is defined as "without another," "singly," and "to the exclusion of all else." *Webster's New Collegiate Dictionary.* Giving to the contract language "solely" its clear, common meaning, it follows that it refers to the exclusive negligence of Getty, i.e., instances where Getty is independently negligent, without the assistance or interference of another. Such a reading neither defies logic nor offends the principles of indemnity. The language of the contract is crystal clear and unequivocal. It is, therefore, valid and enforceable, the meaning of "solely negligent" being "exclusively negligent."

Finally, Catalytic contends that Getty and its primary insurance carrier, Travelers Insurance Company ("Travelers"), have waived their right to indemnification. Basically, Catalytic argues that Travelers (and Getty) is asserting a right of indemnification, a subrogation right which is an equitable remedy, and that one who seeks equity must do equity.

In 1972, Hartford Insurance Company ("Hartford"), Catalytic's primary carrier, determined that it would assume Getty's defense in the *Loden* case, pursuant to the contractual liability contract which Hartford had with Catalytic. Hartford, therefore, hired a law firm to represent Getty. An attorney of that law firm sent Travelers an opinion letter interpreting the indemnity provisions in a manner adverse to Catalytic.

Curiously, Catalytic contends that the attorney should have stated his position directly to The Home Indemnity Company ("Home"), and that Home was under the belief that the attorney was protecting Home's interest since Home was the excess carrier to Hartford, the carrier which had hired the attorney. There is no support in the record for this contention. The attor-

ney's client was Getty, not Hartford, and certainly not Home. His ethical duty in *Loden* was to exercise independent professional judgment on behalf of his client, Getty. Delaware Code of Professional Responsibility, Canon 5. It appears from the record that he has done so.

The only authority cited by Catalytic is *Baio v. Commercial Union Insurance Company,* Del.Supr., 410 A.2d 502 (1979). *Baio* involved a workmen's compensation insurer who joined in the employee-claimant's action against the third party tortfeasors, only to discover that it simultaneously was the liability insurer for one of the alleged wrongdoers. After assessing the financial risks involved, the insurer switched sides and entered the defense of its liability insured. As part of its presentation of the defense of its liability insured, the insurer had used at trial a statement taken from the employee-claimant during its workmen's compensation investigation. Under those circumstances, the Supreme Court held that the carrier had waived its right to enforce the workmen's compensation lien since, faced with the conflict of interest between its subrogor and its liability insured, it opted to protect the insured and obstruct the subrogor to the fullest. Clearly, *Baio* is not applicable to the case at bar. First, neither Getty nor Travelers had any fiduciary relationship with Catalytic's excess insurer, Home, such that its breach would prejudice Home. Furthermore, this case involves more than a statutory subrogation claim and the principles enunciated in *Baio.* Thus, Catalytic's waiver argument is not persuasive.

For the reasons herein enunciated the Court's original decision to deny Catalytic's motion for summary judgment and to grant, in part, Getty's motion for summary judgment is reaffirmed as clarified herein.

IT IS SO ORDERED.