**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 98-41021
_____


FINA, INC., formerly known as American Petrofina, Inc.;
FINA OIL & CHEMICAL CO., formerly known as American
Petrofina Company of Texas,

                    Plaintiffs-Counter Defendants-Appellants,

                         versus

ARCO,

                         Defendant-Cross Claimant-Appellee,

BP OIL COMPANY;
SOHIO PIPE LINE COMPANY,

          Defendants-Counter Claimants-Cross Defendants-Appellees.

_____

             Appeal from the United States District Court
        for the Eastern District of Texas, Beaumont Division

_____

                      January 4, 2000
Before REYNALDO G. GARZA, JOLLY, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

     In this case arising under the Comprehensive Environmental
Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§
9601 et. seq., Plaintiff-Appellant Fina, Inc. ("Fina") appeals the
district court's grant of summary judgment in favor of Defendants-
Appellees BP Oil Company ("BP") and Atlantic Richfield Company

1

("ARCO").  Fina contends that the district court improperly applied Delaware law in holding that cross-indemnities running between the parties bar Fina's CERCLA claims against BP and ARCO.  We hold that the indemnities are unenforceable with respect to the CERCLA liability in question, and accordingly reverse and remand for proceedings consistent with this opinion.

## I.

### *Facts and Proceedings*

BP acquired a refinery located in Port Arthur, Texas from ARCO in 1969.  BP subsequently sold the refinery to Fina in 1973.  The ARCO/BP and BP/Fina agreements of sale contain cross-indemnities that apportion responsibility between the contracting parties for liabilities arising from the operation of the refinery.  The ARCO/BP agreement provides in relevant part that:

> BP shall indemnify, defend, and hold harmless ARCO... against all claims, actions, demands, losses or liabilities arising from the ownership or the operation of the Assets... and accruing from and after Closing... except to the extent that any such claim, action, demand, loss or liability shall arise from the gross negligence of ARCO.

The BP/Fina agreement provides in relevant part that:

> Fina shall indemnify, defend and hold harmless BP... against all claims, actions, demands, losses or liabilities arising from the use or the operation of the Assets... and accruing from and after closing.

In 1989, Fina conducted an environmental investigation

covering all areas of the refinery. It found seven areas of the refinery contaminated with solid and hazardous wastes. Investigating the origins of the contamination, Fina unearthed evidence that the pollution was at least in part attributable to the activities of BP and ARCO.

Fina reported its discovery to the State of Texas. The Texas Natural Resource Conservation Commission ordered Fina to conduct several further investigations. Those investigations are still ongoing. Fina has already incurred over $14 million in investigatory and remedial response costs.

In 1996, Fina sued BP and ARCO seeking contribution and cost recovery under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§9607 and 9613(f).[1] BP filed a declaratory judgment counterclaim against Fina, arguing that Fina's claims are covered by the indemnity provision in the BP/Fina agreement of sale. ARCO filed a similar declaratory judgment cross-claim against BP.

All parties moved for summary judgment. The district court granted the motions of BP and ARCO, ruling that (1) Fina's claims against BP are covered by the BP/Fina indemnity provision, (2)

---

[1] Fina has also made claims under the Resource Conservation Recovery Act, 42 U.S.C. §§ 6901 et seq., and Section 361.344 of the Texas Solid Waste Disposal Act. Although we follow the lead of the district court and the parties to the case in addressing our opinion solely to Fina's CERCLA claims, we discern no reason why our holding should not be equally applicable to these other claims as well.

Fina's claims against ARCO are covered by the ARCO/BP indemnity provision, and (3) because ARCO is indemnified by BP which in turn is indemnified by Fina, a "circuitous indemnity obligation" is owed by Fina to ARCO, which obligation covers Fina's claims against ARCO.

## II.

### *Analysis*

#### A. *Standard of Review*

The proper interpretation of a contract is a question of law subject to *de novo* review.[2]

#### B. *Issues*

We are called on to interpret and determine the enforceability of two related yet distinctly different indemnity provisions. The BP/Fina and ARCO/BP indemnity provisions both allocate responsibility between the contracting parties for liabilities arising from the ownership or operation of the refinery. The two provisions differ, however, in two significant respects. First, whereas the BP/Fina agreement of sale includes a choice of law provision designating Delaware law as the governing law, the ARCO/BP agreement of sale does not contain a choice of law

---

[2] See, e.g., Bolding v. C.I.R., 117 F.3d 270, 273 (5th Cir. 1997).

provision. Second, the ARCO/BP indemnity provision, unlike its BP/Fina counterpart, states that it covers all claims "except to the extent that any such claim... shall arise from the gross negligence of ARCO." We must therefore analyze the two indemnity provisions separately.

*1.   The BP/Fina Indemnity Provision*

Fina contends that the BP/Fina indemnity provision does not indemnify BP for retroactive CERCLA liability. Under the indemnity provision, Fina's obligations to BP extend only to those liabilities that accrue after the closing date of the BP/Fina agreement of sale. Fina contends that, although CERCLA was not enacted until 1980, the CERCLA liability "accrued" at the time that BP and ARCO polluted the refinery grounds —— well before the closing date of the BP/Fina agreement of sale. Fina argues in the alternative that, even if the BP/Fina indemnity provision does purport within its broad terms to cover the CERCLA liability in question, the provision is unenforceable with respect to that liability because governing Delaware law requires that, to indemnify a party for prospective strict liability claims, an indemnity provision must "clearly and unequivocally" state that it covers such claims. As we conclude that the indemnity provision is unenforceable under Delaware law with respect to the CERCLA liability at issue here, we need not reach the question whether the

5

liability "accrued" prior to closing, within the meaning of the agreement.

### a.    Choice of Law

In assessing the enforceability of the BP/Fina indemnity provision, we must first determine which state's choice-of-law provisions govern.  "A federal court must follow the choice-of-law rules of the state in which it sits."[3]  The instant case was filed in the United States District Court for the Eastern District of Texas.  We will therefore follow Texas choice-of-law rules in determining the governing state law.

The BP/Fina agreement of sale specifies that it is governed by Delaware law.  Texas honors contractual choice-of-law provisions unless the designated law is contrary to a "fundamental policy" of Texas.[4]

The relevant principle of Delaware law holds that "in order for a party to be entitled to indemnification for the results of its own negligence the contract must be crystal clear or sufficiently unequivocal to show that the contracting party intended to indemnify the indemnitee for the indemnitee's own

---

[3] St. Paul Mercury Ins. Co. v. Lexington Ins. Co., 78 F.3d 202, 205 (5th Cir. 1996).

[4] DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 677-78 (Tex. 1990).

negligence."[5]  Prior to 1987, Texas followed an identical rule.[6] In 1987, however, the Texas Supreme Court adopted the stricter "express negligence" standard.[7]  This standard holds that "parties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms."[8]

Although the Texas and Delaware rules do differ, it can hardly be said that Delaware's "clear and unequivocal" test violates a fundamental policy of Texas.  "[T]he focus is on whether the law in question is part of state policy so fundamental that the courts of the state will refuse to enforce an agreement contrary to that law, despite the parties' original intentions."[9]  Texas does not, as a matter of public policy, refuse to enforce all indemnity provisions that purport to cover the indemnitee's own negligence.  Texas merely requires that, to merit enforcement as to such claims, an indemnity provision must expressly state that its coverage extends to the negligence of the indemnitee.  The "clear and unequivocal" test is not inconsistent with a fundamental policy of Texas. Delaware law will therefore be applied in interpreting and

---

[5] Sweetman v. Strescon Industries, Inc., 389 A.2d 1319, 1321 (Del. Super. 1978).

[6] See Dorchester v. American Petrofina, Inc., 710 S.W.2d 541, 543 (Tex. 1986).

[7] See Ethyl Corp. v. Daniel Const. Co., 725 S.W.2d 705 (Tex. 1987).

[8] Id at 708.

[9] DeSantis, 793 S.W.2d at 680.

assessing the enforceability of the BP/Fina indemnity provision.

    *b.    Application of Delaware law*

Fina has indemnified BP for "all claims, actions, demands, losses or liabilities arising from the use or operation of the Assets... and accruing from and after Closing." Assuming, without deciding, that the CERCLA liability at issue "accrued" after the closing date of the BP/Fina agreement of sale, the indemnity provision clearly purports to cover CERCLA liability within its broad terms: The phrase "all claims" certainly encompasses claims arising under CERCLA.[10]

The analysis, however, does not stop there. Under Delaware law, contracts to indemnify a party against the consequences of its own negligence are strictly construed against the indemnitee.[11] The purpose of this rule is to ensure that the indemnitor is fully cognizant of the extraordinary risk that it is assuming.[12] The rule functions as a "penalty default"; any entity that wishes to contract away liability for the consequences of its own negligence

---

[10] We do not decide whether a reasonable interpretation of the phrase "all claims" would include claims that were merely prospective at the time the indemnity provision was signed.

[11] See Powell v. Interstate Vendaway, Inc., 300 A.2d 241, 243 (Del Super. 1972); Laws v. Ayre Leasing, No. 92C-07-254, 1995 WL 465334, at *2 (Del. Super. July 31, 1995).

[12] See Laws, 1995 WL 465334, at *2; Clark C. Johnson, Note, Collapsing the Legal Impediments to Indemnification, 69 Ind. L.J. 867, 878 (1994).

is put on notice by the rule that, to be enforceable, any indemnity provision that it signs must state with specificity the types of risks that it is transferring to the indemnitor. If an indemnity provision is not sufficiently specific, Delaware courts simply will refuse to enforce the risk transfer.

Delaware law thus requires that, to be enforceable, "the intent to indemnify must be clear and unequivocal" on the face of an indemnity provision.[13] "To be enforceable, the provision must specifically focus attention on the fact that by the agreement the indemnitor was assuming liability for [the] indemnitee's own negligence."[14] The Delaware courts have often stated that there are no particular words that must be used to render an indemnity provision enforceable.[15] But "[n]o Delaware case has allowed

---

[13] Cumberbatch v. Bd. of Trustees of Del. Tech. & Community College, 382 A.2d 1383, 1386 (Del. Super. 1978). See also Blum v. Kauffman, 297 A.2d 48, 49 (Del. 1972); All-State Investigation and Security Agency v. Turner Constr. Co., 301 A.2d 273, 274-75 (Del. 1972).

[14] James v. Getty Oil Co., 472 A.2d 33, 36 (Del. Super. 1984) (citing Sweetman, 389 A.2d 1319).
The sophistication of the contracting parties is irrelevant; the vast majority of the cases in which Delaware courts have applied the clear and unequivocal test have involved contracts between large, sophisticated entities. See, for example, Powell, 300 A.2d 241 (contract between Interstate Vendaway, Inc. and Chrysler Corp.); Paoli v. Dave Hall, Inc., 462 A.2d 1094 (Del. Super. 1983) (contract between a construction contractor and a subcontractor); James v. Getty Oil Co., 472 A.2d 33 (Del. Super. 1984) (contract between Getty Oil Co. and Catalytic, Inc.).

[15] See James, 472 A.2d at 37; Laws, 1995 WL 465334, at *2 (citing Rock v. Delaware Elec. Coop., Inc., 328 A.2d 449 (Del. Super. 1974)).

indemnification of a party for its own negligence without making specific reference to negligence of the indemnified party."[16] Moreover, Delaware courts have consistently refused to enforce indemnity provisions that use broad, catch-all language but fail to make a specific reference to claims arising from the indemnitee's own negligence.[17]

Thus, to merit enforcement under Delaware law, an indemnity provision must at a minimum demonstrate on its face "that the

---

[16] See Jordan v. E.I. duPont de Nemours and Co., 1986 WL 11553, at *3 (Del. Super. Aug. 8, 1986); Paoli v. Dave Hall, Inc., 462 A.2d 1094, 1098 (Del. Super. 1983). For examples of indemnity provisions that have been upheld as applied to claims arising from the indemnitee's own negligence, see All-State, 301 A.2d at 274 (enforcing a provision indemnifying for "any claims... whether or not such claims are based on Turner's alleged active or passive negligence"); Noble J. Dick, Inc. v. Warburton, 321 A.2d 345, 346 (Del. 1975) (enforcing a provision indemnifying for "all claims... whether or not such injury is due to or chargeable to any negligence of the Contractor"); Cumberbatch, 382 A.2d at 1385 (enforcing a provision indemnifying for "all claims... regardless of whether or not it is caused in part by a party indemnified hereunder"); Fountain v. Colonial Chevrolet Co., 1988 WL 40019 (Del. Super. Apr. 13, 1988) (enforcing a provision indemnifying for "all loss or damages... even if said losses arise out of the negligence of Company").

[17] See Marshall v. Maryland, D. & V. Ry. Co., 112 A. 526 (Del. Super. 1921) (refusing to enforce as applied to a claim arising from the indemnitee's own negligence an indemnity covering "damages of whatsoever kind of nature arising in any manner or under any circumstances"); Paoli, 462 A.2d at 1098 (refusing to enforce as applied to the indemnitee's own negligence an indemnity covering "all suits"); Hitchens v. Cannon & Cannon, 1987 WL 17440 (Del. Super. Sept. 16, 1987) (refusing to enforce as applied to a claim arising from the indemnitee's own negligence an indemnity covering "all... claims... howsoever arising or incurred"); Kreider v. Schumacher & Co., 816 F.Supp. 957, 962 (D. Del. 1993) (stating that "the 'all claims' phrase is modified by Delaware case law to exclude from indemnification claims which arise from [the indemnitee's] own negligence"); Blum v. Kauffman, 297 A.2d 48 (Del. 1972).

10

subject of negligence of the indemnitee was expressly considered"
by the parties in the drafting of the agreement.[18]   The BP/Fina
indemnity provision gives no indication that the parties considered
the issue of indemnifying BP for the consequences of its own
negligence:  There is no reference in the indemnity to BP's own
negligence, and its use of the phrase "all claims, actions,
demands, losses or liabilities" is insufficient as a matter of
Delaware law to satisfy the clear and unequivocal test.  Thus, the
BP/Fina indemnity provision is unenforceable as applied to the
prospective CERCLA liability at issue in this case.

BP attempts to avoid this result on two grounds.  BP first
argues that the clear and unequivocal rule is inapplicable here
because it only applies to claims based on negligence, whereas
CERCLA claims are based on strict liability.  No Delaware case has
addressed the applicability of the clear and unequivocal test to
claims based on strict liability.  Several other jurisdictions,
however, have held that the clear and unequivocal test is fully
applicable to claims based on strict liability.[19]  The transfer of
liability for any prospective legal claim, whether based on

---

[18] Rizzo v. John E. Healy and Sons, Inc., 1990 WL 18378, at *2 (Del. Super. Feb. 16, 1990).

[19] See, e.q, Purolator Products v. Allied Signal, Inc., 772 F.Supp. 124, 131 n.3 (W.D.N.Y. 1991) ("While CERCLA liability is strict, and is not based on negligence, I believe that the policy behind the rule regarding negligence is also applicable here"); Houston Lighting & Power Co. v. Atchison, Topeka & Santa Fe Ry., 890 S.W.2d 455, 458 (Tex. 1994).

negligence or on strict liability, involves an extraordinary shifting of risk. We perceive no reason why Delaware would choose to differentiate between the two types of claims for purposes of this rule. We therefore hold that Delaware's clear and unequivocal rule is equally applicable to indemnification for strict liability claims.

Second, BP argues that the clear and unequivocal test is applicable only to indemnification for that subset of prospective liabilities that is given rise to by future acts of the indemnitee. All of Fina's claims against BP are predicated on actions taken by BP prior to the signing of the BP/Fina indemnity provision. Thus, if BP's argument were correct, the BP/Fina indemnity provision should be interpreted according to normal contract interpretation principles — rather than the "clear and unequivocal" rule — and would preclude Fina's recovery against BP.

No Delaware case has directly addressed the applicability of the clear and unequivocal test to indemnification for prior acts giving rise to potential future liability (with "past" and "future" being determined by reference to the time at which the indemnity provision was signed). Indeed, it does not appear that any Delaware case has ever distinguished between past and future conduct or past and future liability in applying the clear and unequivocal test to an indemnification provision. BP's argument appears to be predicated on Texas law, which specifies that "[the express negligence test] is explicitly limited to releases and

12

indemnity clauses in which one party exculpates itself from its own future negligence."[20]     BP relies on this and other similar statements in Texas cases in concluding that, under Texas law, at least, the express negligence test is inapplicable to indemnification for past conduct giving rise to potential future liability.

Even as to Texas law, it is not at all clear that BP's conclusion is correct.  The language used by the Texas courts is ambiguous:  "Future negligence" might refer to <u>future negligent conduct</u>, but it also might refer to <u>future claims based on negligence</u>.  True, the Texas rule does clearly distinguish between (1) indemnification for past conduct for which claims have already been filed at the time the indemnity provision is signed and (2) indemnification for future conduct for which claims could not possibly have been filed at the time the indemnity provision was signed.  Still, no Texas case has addressed the applicability of the rule to the rare situation in which a party attempts to invoke the protection of an indemnity against a claim filed <u>after</u> the indemnity was signed but arising from conduct that occurred <u>prior</u> to the signing of the indemnity.[21]

---

[20] <u>Green Int'l, Inc. v. Solis</u>, 951 S.W.2d 384, 86-87 (Tex. 1997).

[21] Two Texas courts —— neither of which appears to have been aware of the unusual posture of the case before it —— have decided cases involving such a fact pattern.  One court held that the express negligence rule was applicable, but the case is distinguishable because it involved not only an indemnity but also

13

The purpose of Delaware's clear and unequivocal test is to ensure that indemnitors are fully cognizant of the extraordinary risks that they are assuming. This rationale is consistent with distinguishing between those claims that have been filed at the time that an indemnity is signed and those that are merely prospective: Claims that have already been filed are not an extraordinary risk, as they are a known and calculable quantity. The rationale behind the Delaware rule is not consistent, however, with distinguishing between prospective claims that are based on past conduct and prospective claims that are based on future conduct. Both types of prospective claims constitute unknown quantities. Virtually all prospective claims are in fact unknowable quantities to an indemnitor unless the indemnitee brings the prospective claims to the indemnitor's attention: An indemnitor can always determine whether claims have already been filed against an indemnitee, but it is nearly impossible for an indemnitor to determine whether an indemnitee has engaged in conduct that is likely to give rise to claims in the future.

a warranty. See Dorchester Gas Co. v. American Petrofina, Inc., 710 S.W.2d 541 (Tex. 1986), overruled on other grounds, Ethyl Corp. v. Daniel constr. Co., 725 S.W.2d 705 (Tex. 1987). The other court held that the express negligence rule was inapplicable, but that case is also distinguishable because the court found that, although the claim was not filed until after the signing of the indemnity, the dispute that gave rise to the claim arose before the signing of the indemnity and was within the contemplation of the parties when they signed it. Lexington Insurance Co. v. The W.M. Kellogg Co., 976 S.W.2d 807 (Tex.App. 1 Dist. 1998). In conclusion, Texas law concerning indemnification for past acts giving rise to potential future liability is at best unclear.

It is consistent with the "penalty default" nature of the Delaware rule to place the burden on an indemnitee both to inform potential indemnitors that it has engaged in conduct that may give rise to future liability and to ensure that any indemnity provision that is signed clearly states that the indemnification extends to such future claims. Only by applying the "clear and unequivocal" rule to indemnification for <u>all</u> claims that were merely prospective at the time that an indemnity provision was signed can the courts be sure that the indemnitor was fully cognizant of the extraordinary risk that it was assuming. We are convinced that the Delaware courts would apply the clear and unequivocal rule to BP's claim for indemnification by Fina.

We hold, therefore, that (1) the BP/Fina indemnity provision is subject to the clear and unequivocal test under Delaware law as applied to Fina's CERCLA claims against BP; (2) the BP/Fina indemnity provision fails to satisfy the clear and unequivocal test; and (3) the indemnity provision consequently does not bar Fina's claims against BP.

*2. Fina's "circuitous indemnity obligation" to ARCO*

The district court held that because ARCO is indemnified by BP which in turn is indemnified by Fina, a "circuitous indemnity obligation" is owed by Fina to ARCO. As we hold that Fina does not owe an indemnity obligation to BP with respect to the CERCLA

15

liability in question, Fina necessarily does not owe a "circuitous indemnity obligation" to ARCO. Consequently, Fina is not barred by the indemnity provisions in question from pursuing its claims against ARCO.

*3.  The ARCO/BP indemnity provision*

The ARCO/BP agreement of sale does not contain a choice-of-law provision. ARCO and BP agree, however, that the contract is governed by Texas law. Since 1987, Texas has applied the "express negligence" test in lieu of the "clear and unequivocal" test. The "express negligence" test holds that "parties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms."[22]  This rule is applicable to claims based on strict liability.[23]  And, because the rationale behind the Texas rule is the same as the rationale behind the Delaware rule,[24] we are satisfied that Texas would apply the "express negligence" test to all claims that were merely prospective at the time the indemnity provision was signed.

The ARCO/BP provision indemnifies ARCO for "all claims... arising from the ownership or the operation of the Assets... and accruing from and after Closing... except to the extent that any

---

[22] Ethyl Corp., 725 S.W.2d at 708.

[23] Houston Lighting & Power Co., 890 S.W.2d at 459.

[24] See id.

16

such claim... shall arise from the gross negligence of ARCO." It makes no mention of claims based on BP's own negligence or on strict liability. The Texas Supreme Court has held that an indemnification provision is not enforceable as applied to claims based on strict liability unless that provision expressly states the indemnitor's intent to cover such claims.[25] Even if the exclusion of gross negligence from the indemnity's coverage is interpreted as indicating that BP intended to indemnify ARCO for ordinary negligence,[26] claims based on strict liability are of quite a different nature. Texas law requires that each type of claim be separately referenced by an indemnity provision: "Indemnification against strict liability is an exception to usual business practices in the same manner as indemnifying against someone else's negligence. ... [F]airness dictates against imposing liability on an indemnitor unless the agreement clearly and specifically expresses the intent to encompass strict liability claims."[27] Thus, the ARCO/BP indemnity provision is not enforceable under Texas law as applied to claims based on strict liability. Consequently, ARCO may not seek indemnification from BP for any amounts recovered against it by Fina based on strict liability.

---

[25] Houston Lighting & Power Co., 890 S.W.2d at 458-59.

[26] See Rizzo, 1990 WL 18378, at *2; Laws, 1995 WL 465334, at *2-*3.

[27] Houston Lighting & Power Co., 890 S.W.2d at 458 (refusing to enforce as applied to a strict liability claim an indemnity provision that expressly covered ordinary negligence claims).

17

III.

*Conclusion*

For the reasons discussed above, the district court's grant of summary judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED