**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| ALCOA WORLD ALUMINA LLC and ST. CROIX ALUMINA, L.L.C. | ) ) ) | |
| Plaintiffs and Counterclaim Defendants, | ) ) | C.A. No.: N15C-08-032 EMD CCLD |
| v. | ) ) ) | |
| GLENCORE LTD., | ) ) | |
| Defendant and Counterclaim Plaintiff. | ) | |

Submitted: December 7, 2015
Decided: February 8, 2016

*Upon Consideration of*
*Plaintiffs Alcoa World Alumina LLC and St. Croix Alumina, L.L.C.'s*
*Motion for Judgment on the Pleadings*
***GRANTED***

*Upon Consideration of*
*Defendant Glencore Ltd.'s Motion for Judgment on the Pleadings*
***DENIED***

Gregory P. Williams, Esquire, Lisa A. Schmidt, Esquire, Jeffrey L. Moyer, Esquire, and Travis S. Hunter, Esquire, Richards Layton & Finger, Wilmington, Delaware and Paul Vizcarrondo, Jr., Esquire, Ben M. Germana, Esquire, Kim B. Goldberg, Esquire, and Kevin M. Jonke, Esquire, Wachtell, Lipton, Rosen & Katz, New York, New York, *Attorneys for Plaintiffs Alcoa World Alumina LLC and St. Croix Alumina, L.L.C.*

Anthony G. Flynn, Sr., Esquire and Mary F. Dugan, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware and Eliot Lauer, Esquire, Jason Gottlieb, Esquire, and Michael P. Jones, Esquire, Curtis, Mallet-Prevost, Colt & Mosle LLP, New York, New York, *Attorneys for Defendant Glencore Ltd.*

**DAVIS, J.**

## I.     INTRODUCTION

This is a civil action assigned to the Complex Commercial Litigation Division of the Court. This civil action is a declaratory judgment action to resolve a contractual dispute between parties to an asset purchase agreement. Specifically, Alcoa and Glencore (as defined below)

disagree as to the contractual indemnification rights owed by one former owner of an aluminum refinery (Alcoa) to another former owner (Glencore) for potential losses in a separate action by a third party that involves liability for environmental conditions at the aluminum refinery.

In 2005 and 2007, the government of the Virgin Islands brought actions (the "Virgin Islands Actions") under the Comprehensive Environmental Reponses, Compensation, and Liability Act ("CERCLA") against the former owners and operators of an aluminum refinery located in St. Croix (the "Refinery").[1] The Refinery produced bauxite residue—a hazardous waste—that harmed the Virgin Islands' natural resources. The Virgin Islands Actions ended with two settlements. In the first, Plaintiff St. Croix Alumina, L.L.C. ("SCA") agreed to pay for the remediation of one bauxite residue storage area. Plaintiff Alcoa World Alumina LLC ("AWA" and, together with SCA, "Alcoa") is SCA's parent; AWA did not settle in the Virgin Islands Action. In the second settlement, Lockheed Martin Corporation ("Lockheed") agreed to pay for the remediation of the second bauxite residue storage area and to pay $20.75 million in remediation costs.

Defendant Glencore Ltd. ("Glencore") purchased the Refinery from Lockheed in 1989 through a contract dated April 26, 1989 (the "1989 Agreement"). The 1989 Agreement contains an article that provides that Glencore must indemnify Lockheed for certain "Pre-Closing Environmental Conditions." Lockheed is suing Glencore under this article of the 1989 Agreement in the Southern District of New York on May 11, 2015 (the "New York Action"), seeking indemnification for the costs of settling the Virgin Islands Actions.

Under an Acquisition Agreement dated July 19, 1995 (the "1995 Agreement), SCA purchased the Refinery from Glencore. The 1995 Agreement states that SCA would only accept the liabilities listed in Exhibit B of the 1995 Agreement. The 1995 Agreement also contained an

_____

[1] The specifics of the Virgin Island Actions are discussed in more detail in Section II.B below.

article that provided for the indemnification of Pre-Closing Environmental Conditions. Alcoa filed the present action asking for a declaratory judgment that Alcoa does not have to defend Glencore in the New York Action or indemnify Glencore for costs related to the New York Action. Glencore filed eleven counterclaims, claiming that Alcoa breached the 1995 Agreement and asking the Court to declare that Alcoa must indemnify Glencore.

Aloca filed the Complaint for Declaratory Judgment (the "Complaint") on August 6, 2015. The Court held certain hearings and status conferences with the parties. During these, the parties represented to the Court that most of the facts in this civil action were not disputed. Moreover, the parties felt that the Court may be able to decide the dispute through motions under Civil Rule 12(c). Given this, Glencore filed the Answer, Affirmative Defenses, and Counterclaims of Defendant Glencore Ltd. (the "Counterclaims") on August 27, 2015. Alcoa filed Plaintiffs' Reply and Affirmative Defenses to Counterclaims on September 16, 2015.

Alcoa filed Plaintiffs' Motion for Judgment on the Pleadings on Plaintiffs' Claims and on Defendant's Counterclaims Two, Three, and Six Through Eleven ("Alcoa's Motion") on September 16, 2015. Glencore filed Glencore Ltd.'s Rule 12(c) Motion for Judgment on the Pleadings ("Glencore's Motion") on October 2, 2015. Glencore filed Glencore Ltd.'s Answering Brief in Opposition to Alcoa's Rule 12(c) Motion for Judgment on the Pleadings ("Glencore's Opposition") on October 12, 2015. Alcoa filed Plaintiffs' Reply Brief in Support of Plaintiffs' Motion for Judgment on the Pleadings on Plaintiffs' Claims and on Defendant's Counterclaims Two, Three, and Six Through Eleven ("Alcoa's Reply") on October 23, 2015. Alcoa filed Plaintiffs' Brief in Opposition to Defendant's Motion for Judgment on the Pleadings ("Alcoa's Opposition") on October 23, 2015. Glencore filed Reply Brief in Support of Glencore Ltd.'s Rule 12(c) Motion for Judgment on the Pleadings ("Glencore's Reply") on November 2, 2015.

On December 7, 2015, the Court held a hearing on Alcoa's Motion, Glencore's Motion, Glencore's Opposition, Alcoa's Reply, Alcoa's Opposition, and Glencore's Reply. At the conclusion of the hearing, the Court took the matter under advisement.

This is the Court's decision on the Motions. For the reasons set forth below, the Court will **GRANT** Alcoa's Motion and will **DENY** Glencore's Motion.

## II. RELEVANT FACTS

### A. THE REFINERY OWNERSHIP

A predecessor of Lockheed built the Refinery in 1965.[2] The Refinery processes bauxite ore into alumina.[3] The process produces alumina, sand, and bauxite residue (also known as "red mud").[4] Red mud is a hazardous material that can cause environmental problems.[5] Between 1965 and 1972, Lockheed and its predecessors deposited the red mud into a storage facility now called "Area B."[6] From 1972 on, Lockheed and its successors deposited the red mud into a storage facility now called "Area A."[7]

On April 26, 1989, Virgin Islands Alumina Corporation ("Vialco"), an affiliate of Glencore, acquired the Refinery from Martin Marietta Aluminum Properties, Inc. ("Martin Marietta") pursuant to the 1989 Agreement.[8] In an April 26, 1989 letter, Clarendon Ltd. (now named Glencore Ltd.) guaranteed Vialco's performance under the 1989 Agreement, including any indemnification obligations to Martin Marietta.[9] Martin Marietta later merged into Lockheed. Lockheed was the successor to the 1989 Agreement.[10]

---

[2] Answer, Affirmative Defenses, and Counterclaims of Defendant Glencore Ltd. at 26.
[3] *Id.*
[4] *Id.*
[5] *Id.* at 2-3.
[6] *Id.* at 26.
[7] *Id.*
[8] *Id.* at 28.
[9] *Id.* at 29.
[10] *Id.*

4

On July 24, 1995, SCA acquired the Refinery from Vialco through the 1995 Agreement.[11] The 1995 Agreement defines Vialco as the "Seller" and SCA as the "Buyer." [12] Article 7.3 of the 1995 Agreement sets out the claims and costs for which SCA must indemnify Vialco:

> Subject to the provisions of Article VIII of this Agreement, Buyer shall indemnify and hold Seller harmless from and against any and all Losses arising out of or related to:
>
> (1) activities or transactions occurring or entered into by Buyer after the Closing Date;
>
> (2) any failure to perform or breach by Buyer of any representation, warranty, covenant, obligation or undertaking made or assumed by Buyer in or pursuant to this Agreement which survives Closing;
>
> (3) the Assumed Liabilities.[13]

The Assumed Liabilities are set out in Article 2.1 of the 1995 Agreement.[14] Relevant to this civil action is Article 2.1(a):

> (a) Upon the terms and subject to the conditions contained herein, Seller hereby sells, conveys, transfers, assigns and delivers to Buyer, and Buyer hereby acquires the Assets of Seller, and Buyer hereby assumes the Assumed Liabilities set forth on Exhibit B. The Assets are being sold "AS IS, WHERE IS," without representation, warranty or guaranty of any kind or nature, express or implied, except to the extent specifically provided otherwise in Article IV of this Agreement.[15]

The end of Article 2.1 provides that: "**EXCEPT AS SET FORTH ON *EXHIBIT B*, NO LIABILITIES, ACTUAL, CONTINGENT OR OTHERWISE, ARE BEING TRANSFERRED BY SELLER TO BUYER.**"[16]

---

[11] *Id.*
[12] Complaint for Declaratory Judgment, Exhibit 1, Acquisition Agreement at 1. Article 7.3. Exhibit 1 to the Complaint for Declaratory Judgement will be cited to as "Acquisition Agreement at __."
[13] *Id.*, Acquisition Agreement at Article 7.3.
[14] *Id.* at Article 2.1.
[15] *Id.*(emphasis in original).
[16] *Id.*(emphasis in original).

Exhibit B lists the liabilities assumed under Article 2.1(a).[17]  The list includes:

1. The liabilities and obligations which Buyer assumes pursuant to the provisions of Article II of the Agreement.

2. The liabilities and obligations of Seller under the executory portion of any assigned contract or agreement referred to on Exhibit A to the Agreement, excluding amounts due and owing or in dispute as of the Closing Date.

3. The liabilities and obligations of Seller under the executory portion of any permit, license, governmental order, directive, or agreement (a) issued to Seller prior to the Closing Date in the ordinary course of the ownership of the Assets and the business and operation of the Refinery and (b) assigned and transferred pursuant to the Agreement.

4. From and after the Closing Date, any and all Losses, except those which Seller is responsible to pay pursuant to this Agreement and those as to which Buyer is entitled to be indemnified pursuant to the terms of this Agreement.[18]

Exhibit A of the 1995 Agreement lists the assets being sold, including the contracts assumed.[19]  Only two contracts are assumed:

- Contracts:

  That certain Agreement between Seller and the Virgin Island Water and Power Authority dated April 2, 1993; and

  That certain Tolling Agreement between Seller and Hess Oil Virgin Islands Corporation dated October 14, 1994.[20]

The 1995 Agreement defines "Loss" as "any claim, liability, loss, damage, cost or expense, including reasonable counsel fees and disbursements, arising from the ownership or operation of the Refinery."[21]

Article VIII contains a more specific indemnification provision for Pre-Closing Environmental Conditions:

---

[17] *Id.*at Ex. B.
[18] *Id.*
[19] *Id.*at Exhibit A.
[20] *Id.*
[21] *Id.*at Article 1.1.

Buyer shall be responsible for, and shall indemnify, save and hold Seller and its affiliates harmless with respect to

(1) all Environmental Conditions at the Refinery which are not Pre-Closing Environmental Conditions as to which Seller has agreed to indemnify Buyer pursuant to this Article VIII;

(2) the removal or encasing of asbestos in or on Assets as contemplated by Section 8.6 of this Agreement; and

(3) the maintenance, operation and management of all bauxite residue storage facilities appurtenant to the Refinery, including, but not limited, to Pre-Closing Environmental Conditions relating to bauxite residue storage and disposal but not including any improper storage or disposal of other materials in bauxite residue storage facilities, the storage or disposal of which materials created a Pre-Closing Environmental Condition.[22]

"Pre-Closing Environmental Conditions" are:

[C]onditions arising from the operation of the Refinery by Seller or its agents, and existing at or before the Closing, pertaining to, without limitation, surface or subsurface conditions, soil or the groundwater at the Refinery, any off-site disposal arranged by or for Seller, and the migration of substances from the real property of the Refinery, to the extent, and only to the extent, that such conditions, pursuant to Legal Requirements as in effect on the Closing Date and application to the Assets and the Refinery:

(1) require (with or without notice or a Judgment with respect thereto) remedial investigation and/or action and/or involve suits, actions or other proceedings for remedial action, study or investigation, and/or

(2) give rise to Judgments, claims, demands, penalties, costs, and/or other liability of any nature of Buyer.[23]

**B.**    **THE VIRGIN ISLANDS ACTIONS AND SETTLEMENTS**

On May 5, 2005, the Virgin Islands' Department of Natural Resources (the "Government") filed an action (the "Government Action") against AWA, Lockheed, and Vialco's parent Century Aluminum Company ("Century").[24]  The Government Action alleged

---

[22] *Id.*, Exhibit 1, Article 8.3.
[23] *Id.*, Exhibit 1, Article 8.1.
[24] Answer, Affirmative Defenses, and Counterclaims of Defendant Glencore Ltd. at 39-40.

that the defendants had violated CERCLA and Virgin Islands common law by failing to properly maintain, operate, and manage the red mud storage facilities at the Refinery.[25]

Under CERCLA, all owners or operators of a facility like the Refinery can be held jointly and severally liable for the costs to remediate environmental contamination and for compensation for the loss of natural resources.[26]

On October 18, 2007, the Government filed an action against the then-owner of the Refinery, St. Croix Renaissance Group ("SCRG").[27] On May 26, 2009, SCRG filed a Third Party Complaint against Alcoa, Lockheed, Vialco, and Century (the "Former Owners").[28] SCRG alleged that the Former Owners were jointly and severally liable for any remediation costs.[29] On September 8, 2009, SCRG filed an amended action and named the Former Owners as defendants.[30] The Government then amended its own complaint to name the Former Owners as defendants.[31]

On November 11, 2009, Vialco and Century informed Alcoa that SCA was responsible for any costs that Vialco or Century incurred in the Virgin Islands Actions under the 1995 Agreement.[32] Vialco offered Alcoa the opportunity to assume Vialco's defense.[33] On November 23, 2009, Alcoa responded via letter that the 1995 Agreement did not obligate SCA to defend Vialco.[34] Alcoa also stated that it would not respond to the request for indemnification at

---

[25] *Id.* at 40.
[26] Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675 (2012).
[27] Answer, Affirmative Defenses, and Counterclaims of Defendant Glencore Ltd. at 40.
[28] *Id.* at 41.
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.* at 42.
[34] *Id.*

that time.[35] Vialco and Century incurred over $4.3 million in expenses defending themselves in the Virgin Islands Actions.[36]

In November 2011, Alcoa entered into a consent decree (the "Alcoa Consent Decree") with the Government.[37] Under the Alcoa Consent Decree, Alcoa agreed to remediate Area A in exchange for a complete release from the Government's claims.[38] Despite objections from Vialco and Lockheed, the court approved the Alcoa Consent Decree on February 13, 2012.[39]

In February 2014, Lockheed sent Glencore a letter stating that the 1989 Agreement obligated Vialco to indemnify Lockheed for its costs in the Virgin Islands Actions and that Glencore guaranteed Vialco's obligations under the 1989 Agreement.[40] The same month, Glencore notified Alcoa of Vialco's indemnification claim.[41] Glencore told Alcoa that Vialco was an affiliate of Glencore, so Alcoa must indemnify Vialco under Article 8.3(3) of the 1995 Agreement.[42] In April 2014, Glencore and Alcoa communicated several times about Glencore's indemnification claim and about a possible settlement.[43] Glencore rejected Alcoa's request to become involved in settlement discussions with Lockheed and the Government.[44]

In June 2014, Vialco agreed to pay the Government $625,000 in settlement of the Virgin Islands Action.[45] The court entered a Consent Decree on July 21, 2014.[46] In a July 16, 2014

---

[35] *Id.*
[36] *Id.*
[37] *Id.* at 43.
[38] *Id.*
[39] *Id.* at 44.
[40] *Id.* at 46.
[41] *Id.*
[42] *Id.*
[43] *Id.* at 46-48.
[44] *Id.* at 46-47.
[45] *Id.* at 45.
[46] *Id.* at 47.

letter, Vialco made an indemnity claim against Alcoa for $625,000.[47]  Vialco has since assigned

its rights to seek recovery to Glencore.[48]

In the same settlement, Lockheed agreed to pay the Government $20.75 million and to

remediate Area B.[49]  Lockheed estimates the remediation will cost between $35.35 million and

$75.75 million.[50]

## C.    THE NEW YORK ACTION

On May 11, 2015, Lockheed filed a complaint (the "Lockheed Complaint") in the United

States District Court of the Southern District of New York against Glencore, as Vialco's

guarantor, to cover its costs and the expenses related to the remediation of Area B.[51]  Lockheed

seeks indemnification from Glencore under the 1989 Agreement.  Lockheed asserts three claims

for relief in the Lockheed Complaint: (i) breach of contractual obligations to indemnify under the

1989 Agreement;[52] (ii) breach of contractual guarantee by Glencore of Vialco's indemnification

obligations under the 1989 Agreement;[53] and (iii) declaratory judgment with respect to the

contractual indemnifications and the guarantee under the 1989 Agreement. [54]

In the Lockheed Complaint, Lockheed alleges that Glencore must indemnify Lockheed

under Article 10 of the 1989 Agreement, a provision that provides for indemnification for Pre-

Closing Environmental Conditions.[55]  According to Lockheed, the environmental issues in the

Virgin Islands Actions were "Pre-Closing Environmental Conditions" because the Virgin Island

Actions "seek to redress soil and groundwater contamination at and emanating from the former

---

[47] *Id.* at 45.
[48] *Id.*
[49] *Id.* at 47-48.
[50] *Id.* at 48.
[51] *Id.*
[52] Complaint for Declaratory Judgment, Exhibit 2, Exhibit A ¶¶ 63-71.
[53] Id. at Exhibit 2, Exhibit A ¶¶ 72-79.
[54] Id. at Exhibit 2, Exhibit A ¶¶ 80-85.
[55] Id. at Exhibit 2, Exhibit A ¶¶ 48-62.

10

Alumina Facility, particularly from the red mud storage Areas A and B that Martin Marietta and/or its predecessor used for disposal purposes during their operation of the Alumina Facility."[56]

The New York Action is clearly a civil action to enforce contractual rights under the 1989 Agreement. Lockheed relies entirely upon the 1989 Agreement and successor liability under that agreement for its claims against Glencore. Lockheed does not seek any type of indemnification or contribution rights under common law or under CERCLA.

Glencore notified Alcoa of the New York Action on May 12, 2015.[57] Glencore told Alcoa that Alcoa had a duty to indemnify Glencore under Articles 10 and 16 of the 1995 Agreement.[58]

## D.     THE DELAWARE ACTIONS

Alcoa filed an action in the Delaware Court of Chancery on June 5, 2015, after receiving the May 12, 2015 letter from Glencore.[59] Alcoa sought an injunction to prevent Glencore from bringing Alcoa into the New York Action because the 1995 Agreement provided a right to an exclusive Delaware forum.[60] On July 20, 2015, Glencore filed a motion to dismiss and claimed that it had no intention of bringing Alcoa into the New York Action.[61] The case was dismissed without prejudice.[62]

---

[56] *Id.*, Exhibit 2, Exhibit A ¶ 50.
[57] *Id.* at 49.
[58] Article 11 is an Indemnification provision, but Lockheed does not use it in its Complaint in the New York Action.
[59] Complaint for Declaratory Judgment ¶ 8.
[60] *Id.*
[61] *Id.* ¶ 9.
[62] *Id.* ¶ 10

11

Alcoa filed this action on August 6, 2015. Alcoa requested a declaration that Alcoa is not obligated to defend or indemnify Glencore in the New York Action under the 1995 Action.[63] Alcoa also asked the Court to award attorneys' fees and costs.[64]

In its Answer, Affirmative Defenses, and Counterclaims of Defendant Glencore Ltd., Glencore contends that Alcoa breached its obligation to be responsible for the bauxite residue and assume the liabilities.[65] Glencore also contends that Alcoa breached its obligation to indemnify Glencore.[66] Finally, Glencore contends that it is entitled to declaratory judgments that Alcoa must cover the environmental costs and costs of the Bauxite residue storage facilities and that Alcoa must indemnify Glencore for the Lockheed Remediation, the New York Action fees, and the fees incurred while enforcing the 1995 Agreement.[67]

### III.    LEGAL STANDARD

A party may move for judgment on the pleadings pursuant to Civil Rule 12(c).[68]  In determining a motion under Civil Rule 12(c) for judgment on the pleadings, the Court is required to view the facts pleaded and the inferences to be drawn from such facts in a light most favorable to the non-moving party.[69] The Court must take the well-pleaded facts alleged in the complaint

---

[63] *Id.* ¶¶ 34-50.
[64] *Id.* ¶ iii.
[65] Answer, Affirmative Defenses, and Counterclaims of Defendant Glencore Ltd. at 50-55.
[66] *Id.* at 55-60.
[67] *Id.* at 60-69.
[68] Civil Rule 12(c) provides:
> *Motion for judgment on the pleadings.* -- After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.  If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Del. Super. Civ. R. 12(c).
[69] *See Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993); *see also Warner Commc'ns, Inc. v. Chris–Craft Indus., Inc.*, 583 A.2d 962, 965 (Del. Super.), *aff'd without opinion*, 567 A.2d 419 (Del. 1989).

as admitted.[70]  When considering a motion under Civil Rule 12(c), the Court also assumes the truthfulness of all well-plead allegations of fact in the complaint.[71]  The Court must, therefore, accord plaintiffs opposing a Rule 12(c) motion the same benefits as a plaintiff defending a motion under Civil Rule 12(b)(6).[72]  The Court may grant a motion for judgment on the pleadings only when no material issue of fact exists and the movant is entitled to judgment as a matter of law.[73]

## IV.    DISCUSSION

### A.    INDEMNIFICATION OF THE NEW YORK ACTION

The Complaint and the Counterclaims all seek relief through the interpretation and application of the terms of the 1995 Agreement.  Under Delaware law, the Court generally interprets a contract as a matter of law.[74]  The Court may interpret an unambiguous contract as a matter of law by giving clear and unambiguous terms their plain and ordinary meaning.[75]  An ambiguity exists where a term has more than one interpretation.[76]

The Court has reviewed the 1995 Agreement.  In addition, the Court has been guided by the well-drafted papers filed by the parties in this civil action and the helpful arguments of counsel at the various hearings held by the Court.  The Court has determined that the 1995 Agreement is unambiguous on the issues raised in this civil action.  Because the 1995 Agreement is unambiguous, the Court may give the 1995 Agreement its ordinary meaning in coming to its decisions.[77]

---

[70] *See Desert Equities, Inc.*, 624 A.2d at 1205; *Warner Commc'ns, Inc.*, 583 A.2d 965.
[71] *See McMillan*, 768 A.2d at 500.
[72] *Id.*
[73] *See Desert Equities, Inc.*, 624 A.2d at 1205; *Warner Commc'ns, Inc.*, 583 A.2d 965.
[74] *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 286 (Del. 2001).
[75] *Id.* at 288.
[76] *Id.*
[77] *See GMG Capital Inv., LLC v. Athenian Venture Partners I*, 36 A.3d 776, 780 (Del. 2012).

The next question is how to characterize the Virgin Islands Actions, the New York Action, and the present action. The Virgin Islands Actions involved environmental conditions—the problems caused by the storage of the red mud. The Virgin Island Actions were brought by governmental agencies in the Virgin Islands (*e.g.*, the Virgin Island's Department of Natural Resources) against various entities under CERCLA. The New York Action is a contract dispute that arose out of the Virgin Island Actions. In the New York Action, Lockheed is seeking to assert various contractual rights it believes it has under the 1989 Agreement against Glencore for Lockheed's settlement in the Virgin Islands Actions. The gravamen of this civil action is whether Alcoa has to indemnify Glencore under the 1995 Agreement with respect to liability that may arise in connection with the New York Action.

Glencore wants the Court to look at this civil action as a case about Pre-Closing Environmental Conditions so that Article 8.3 will apply. Alcoa, on the other hand, wants the Court to approach this action as a case about assumed liabilities under Article 2.1, arguing that Alcoa did not assume Glencore's liabilities under the 1989 Agreement.

It is true that Alcoa might have had a duty to indemnify Glencore for pre-closing environmental conditions if the costs of the red mud contamination were at issue in this action – *e.g.*, liability that might arise in connection with the Counterclaims' Counts 1, 4, 5, 7, and 11. The problem with applying Article 8.3 in this case, however, is that this civil action is about contractual liability – Alcoa's responsibility to indemnify Glencore for Glencore's contractual liability to Lockheed under the 1989 Agreement.

Excluding certain of the claims asserted in the Counterclaims, the Court sees this civil action as relating to what contractual obligations Alcoa agreed (i) to assume under Article 2 or (ii) to indemnify Glencore under Article 7.3. Alcoa initiated this civil action to obtain a

14

declaration that Alcoa is not obligated under the 1995 Agreement to indemnify Glencore in connection with the New York Action. In the New York Action, Lockheed seeks to enforce certain contractual indemnification rights against Glencore under the 1989 Agreement.

Delaware courts will enforce a contract in which one party agrees to indemnify another party.[78] When doing so, Delaware courts construe indemnification agreements strictly against the indemnitee, and do not permit enforcement of broad or ambiguous indemnity provisions.[79] Moreover, the interpretation of indemnification provisions cannot contradict the plain text of the agreement or logic of the transaction.[80] Applying these general principles, the Court holds that for Alcoa to be liable for the New York Action, Alcoa would have had to specifically assume the liabilities for the 1989 Agreement in the 1995 Agreement in Article 2, or the indemnification clause in Articles 7.3 or 8.3 should have referenced the assumption of "contractual liability" or the 1989 Agreement.

While the Court (and the parties) have not discovered any Delaware authority directly on point, the Court is comfortable with the reasoning utilized by the United States Court of Appeals for the Third Circuit. In *Beloit Power Systems, Inc. v. Hess Oil Virgin Islands Corporation*, the Third Circuit held that a contract must contain "an unequivocal undertaking by an indemnitor to assume contractual liability undertaken by its indemnitee."[81] The indemnification clause "must clearly and unambiguously express such an intention" through "specific language that clearly manifest[s] such an intent."[82]

For example, an indemnification clause that "hold[s] [the indemnitee] harmless from and against any and all loss, damage, injury liability and claims against [the indemnitee]" is not

---

[78] *See, e.g., All-State Investigation & Sec. Agency, Inc. v. Turner Constr. Co.*, 301 A.2d 273 (Del. 1972).
[79] *See, e.g., James v. Getty Oil Co. (Eastern Operations)*, 472 A.2d 33, 37 (Del. Super. 1983).
[80] *See Winshall v. Viacom Int'l Inc.*, C.A. No. 6074-CS, 2012 WL 6200271, at *5 (Del. Ch. Dec. 12, 2012)
[81] 757 F.2d 1431, 1434 (3d Cir. 1985).
[82] *Id.* at 1433-34.

sufficiently specific to demonstrate "an unequivocal undertaking" of the indemnitee's contractual liability.[83] An indemnification clause that *does* specifically assume certain contractual liability is in *Willey v. Minnesota Mining & Manufacturing Company. v. Haverstick-Borthwick Company*: "The subcontractor agrees to be bound by the terms of the aforesaid principal contract, as far as applicable to this subcontract, and to assume toward the general contractor all the obligations and responsibilities that the general contractor, by those documents, assumes toward the owner."[84]

Applying the Third Circuit's reasoning in *Beloit*, the Court finds that the plain text of the 1995 Agreement does not contain an unequivocal undertaking of the contractual liability arising from the 1989 Agreement. Unlike the indemnification clause in *Willey*, the 1995 Agreement does not specifically identify the 1989 Agreement as a contract whose obligations and responsibilities Alcoa assumes.[85] Because the 1989 Agreement is not specifically assumed, the Court cannot find that Alcoa has a duty to indemnify Glencore in the New York Action.

The sale of the Refinery and its assets and liabilities was a major transaction – the cash consideration for the transaction is $60,000,000 USD.[86] The 1995 Agreement sets forth the allocation of assets and liabilities in a manner that is logical considering the responsibilities of the SCA and Vialco *vis a vis* the Refinery after July 19, 1995. The Court also notes that it is unlikely that sophisticated parties like SCA and Vialco did not consider the 1989 Agreement when they negotiated the 1995 Agreement. This is true because many other outstanding contracts were considered and dealt with in the 1995 Agreement.[87] If SCA and Vialco wanted

---

[83] *Id.*
[84] 755 F.2d 315, 318-19, 324 (3d Cir. 1985); *see also Beloit*, 757 F.2d at 1434.
[85] *See* Acquisition Agreement at Articles 2.1, 7.3 and 8.3.
[86] *Id.* at Article 2.2(a).
[87] *See, e.g., id.* at Article 7.2(a)(3) (indemnification for claims by Alusuisse in connection with the "Agreement between Alesa Alusuisse Engineering Ltd. and [Vialco] dated July 9, 1993 (other than any claim that [SCA] has not performed its obligations under that agreement following the closing date)."); *id.* at Ex. B.2 ("The liabilities and obligations of [Vialco] under the executory portion of any assigned contract or agreement referred to on Exhibit A to the Agreement, excluding amounts due and owing or in dispute as of the Closing Date.").

SCA to indemnify Vialco for claims under the 1989 Agreement, then the parties would have listed it as an assumed contract in the 1995 Agreement. Instead, SCA assumed contractual obligations for contracts in Article 2 and Exhibits A and B of the 1995 Agreement. The 1989 Agreement is not specifically listed among the contracts assumed in Exhibits A or B.

**B.      COUNTERCLAIMS**

Counts 2, 3, 6, 8, 9, 10, and 11[88] are related to the indemnification of the New York Action that is discussed above. The Court has determined that Alcoa does not have a duty to indemnify Glencore under the 1995 Agreement for the New York Action. As such, the Court must deny Glencore's Motion for judgment on the pleadings as to Counts 2, 3, 6, 8, 9, and 10.

Counts 1, 4, 5, 7, and 11 are related to the indemnification of Vialco in the Virgin Islands Actions. This requires the Court to do a separate analysis of whether Alcoa should have indemnified Vialco under the 1995 Agreement. This issue turns on the interpretation of Article 8.3(3). The Court needs to know whether the environmental conditions in the Virgin Islands Actions were Pre-Closing Environmental Conditions and whether Vialco caused the condition by improperly storing materials. These claims require a finding of fact, so these claims are not ripe for relief under Civil Rule 12(c). Given the way both parties have litigated this civil action to date, however, the issue may be one for summary judgment after some record has been developed.

---

[88] Counterclaim Count 11 is for the fees incurred in enforcing the 1995 Agreement, so it related to the New York Action and to Glencore's expenses the Virgin Islands Actions.

## V.     CONCLUSION

For the foregoing reasons, Alcoa's Motion is **GRANTED** and judgment on the pleadings entered in favor of Alcoa on the request sought in the Complaint.  In addition, for the foregoing reasons, Glencore's Motion is **DENIED**.  The Court will set a status hearing among the parties on how to proceed on the Counterclaims remaining counts.

**IT IS SO ORDERED.**

Dated: February 8, 2016
Wilmington, Delaware

                                        /s/ *Eric M. Davis*
                                        Eric M. Davis